## EXCISE BOARD OF STEPHENS COUNTY v. CHICAGO, R. I. & P. RY. CO.

No. 25364.   June 28, 1934.

Jerome Sullivan, Co. Atty., A. J. Marmaduke, Asst. Co. Atty., and Hayes, Richardson, Shartel, Gilliland & Jordan (Lynn Adams, of counsel), for plaintiff in error.

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, for defendant in error.

BUSBY, J. This is an appeal from a decision of the Court of Tax Review declaring invalid certain protested tax levies made by the excise board of Stephens county for the fiscal year of 1933-34.

In the lower court the Chicago, Rock Island & Pacific Railway Company, a corporation, defendant in error herein, was protestant, and the excise board of Stephens county, plaintiff in error herein, was protestee. The parties will be referred to as protestant and protestee when not otherwise designated.

The first question to be decided is: Can a municipality make a levy to remove a portion of an existing sinking fund deficit, which levy is in addition to the regular annual levy necessary to pay the interest on the outstanding sinking fund indebtedness and provide a fund for the payment of the principal of such indebtedness at the maturity date thereof? The answer to this question depends upon the constitutionality of a portion of section 1 of chapter 27, Session Laws 1933. Prior to the passage of that legislative act, such an additional levy could not be made. Going, Co. Treas., v. A., T. S. F. Ry. Co., 106 Okla. 258, 234 P. 346; M., K. &. T. Ry. Co. v. Goad, Co. Treas., 117 Okla. 129, 245 P. 617; In re Gypsy Oil Co., 141 291, 285 P. 67, and Coggeshall & Co. v. Smiley, 142 Okla. 9, 285 P. 48. See, also, Texas Empire Pipe Line Co. v. Excise Board of Nowata Co., 165 Okla. 90, 24 P. (2d) 988.

The question under consideration is presented by the following facts appearing in the record: At the beginning of the fiscal year of 1933-1934, deficits existed in the respective sinking funds of Brown and King

townships, both in Stephens county. The sinking funds existed by reason of outstanding unmatured bonded indebtedness of each of such townships. In each of the sinking funds there was a deficit, probably—although the record does not clearly reflect the cause—created by the failure of the taxing officials to make the proper annual levy for sinking fund purposes in prior fiscal years. The deficit is undisputed.

The excise board of Stephens county made the proper annual levy for each of the townships to meet the interest and to raise the proper portion of a fund to pay the bonds on the due date thereof. In addition thereto a levy was made for each township to raise a sum sufficient to replenish a portion of the sinking fund deficit. The method and accuracy of computing the amount of such additional levy is unquestioned in this case. It was determined in each instance by dividing the amount of sinking fund deficit by the number of fiscal years which will occur prior to the maturity date of the bonded indebtedness.

The additional levy is said by the protestee to have been authorized by that portion of chapter 27, supra, which reads:

"When any municipal corporation shall in any fiscal year omit to make a levy which could have been validly made, for any judgment, bonds, or interest coupons, or where the sinking fund does not equal the accrual liabilities, it is, in the following years, hereby authorized and empowered to make, in addition to all other levies, such tax levy as will, by the maturity dates thereof, raise a fund sufficient to pay the obligations when due."

The protestant concedes that the quoted portion of the statute authorizes the additional levy made for each township if such statute is valid, but urges that the same is unconstitutional, and therefore void. The contention of the protestant was sustained by the Court of Tax Review, and the portion of the statute in question declared unconstitutional. In so deciding, the lower court was in error, and its decisions will be reversed.

The protestant urges that the Legislature was prohibited from authorizing such an additional levy by sections 26 and 28 of article 10 of our state Constitution. Section 26 of article 10 reads:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose, nor in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness; Provided, that any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same."

Section 28 of article 10 provides:

"Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payment of such parts of judgments as such municipality may, by law, be required to pay."

A careful examination of the above-quoted constitutional provision fails to disclose any express provision which either authorizes or prohibits the making of an additional levy to remove an existing sinking fund deficit. Neither do those constitutional provisions expressly limit the power of the Legislature to enact laws authorizing such a levy. If such a constitutional limitation on the power of the Legislature exists, it must be implied, and such implied limitation of legislative authority must necessarily ignore the plain intent of the constitutional provisions, supra, that bonded indebtedness shall be paid on the due date thereof. We have previously held that sections 26 and 28 of art. 10 of the Constitution, supra, when considered in connection with previous existing legislation, did not authorize such an additional levy. Going, Co. Treas., v. A., T. & S. F. Ry. Co., supra; M., K. & T. R. Co. v. Goad, Co. Treas., supra; In re Gypsy Oil Co., supra; Coggeshall & Co. v. Smiley, supra. But that was before the passage of the 1933 act. The problem before the court in those cases was materially different from that presented in the case at bar. In this case we have the 1933 legislative act authorizing the levy. When those cases were decided such act was not in existence. Those decisions, however, and the force and effect thereof

must be considered in the light of the frequently repeated principle of tax law:

"Executive and ministerial officials enforce the tax laws, but in doing so they must keep strictly within the authority those laws confer. They neither have nor can have a roving commission to levy and collect taxes from the people without authority of law, but they can only do so in the manner prescribed by the law." Prince, Co. Treas., v. St. L. & S. F. Ry. Co., 110 Okla. 141, 237 P. 106; Ryan, Co. Treas., v. Roach Drug Co., 113 Okla. 130, 239 P. 912; Bank of Picher v. Morris, 157 Okla. 122, 11 P. (2d) 178.

Since no authority for an additional levy to replenish a sinking fund deficit existed in the Constitution, and no statute authorizing or purporting to authorize such a levy was before the court when the above-mentioned decisions were rendered, this court decided in the cases cited, supra, that such levy could not be made by the executive officers charged with the duty of making tax levies. The fact that the authority for making the levies for sinking fund purposes previously authorized arose in part from the constitutional provisions above quoted, as judicially interpreted, does not militate against the authority of the Legislature to enact adequate and proper laws to authorize a levy which will remove an existing sinking fund deficit. Authority to do a particular act arising from a constitutional provision does not ordinarily "prohibit by implication" appropriate legislation dealing with the same subject-matter. Section 36 of article 5 of the state Constitution provides:

"The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever."

This section, as said by this court, speaking through Chief Justice Williams, in the case of State ex rel. v. Hooker, 22 Okla. 712, 98 P. 964, "was incorporated, to exclude the idea of the exclusion of power by implication." In that case this court said in syllabus 5:

"The only limitation, unless otherwise expressly indicated, imposed upon the Legislature in such legislation is that the rights guaranteed thereunder shall not be curtailed, or any undue burdens placed thereon. Supplementary legislation in particulars, where, in itself, it is not as complete as may be desirable, may be enacted."

To the same effect see Anderson v. Ritterbusch, Co. Treas., 22 Okla. 761, 98 P. 1002.

Furthermore, this court will not declare an act of the Legislature void on constitutional grounds unless it is palpably and plainly inconsistent with the terms and provisions of the Constitution. Protest of Downing, 164 Okla. 181, 23 P. (2d) 173. See, also, Ryan v. State, 102 Okla. 168, 228 P. 521.

It must be remembered, while we are considering the validity of the act under consideration, that the existence of a deficit in a sinking fund does not relieve the municipality of its obligation to pay the sinking fund indebtedness. Sooner or later the debt must be paid. Under the law as it existed prior to the enactment of chapter 27, S. L. 1933, deficits were generally paid ultimately by the taxpayers in one of two ways: First, by judgment against the municipality after due date of the unpaid obligation, which judgment under our statute (section 5913, O. S. 1931, as amended by chapter 27, S. L. 1933, supra) was required to be paid not to exceed one-third for any one year. Second, by funding the past-due indebtedness as provided by article 4 of chapter 32, O. S. 1931. In either case the ultimate burden of the deficit must fall upon the taxpayers. The effect in practical operation of the law, as it previously existed, was to postpone the pay day, some times as much as 25 years from the date of the appearance of the deficit.

The law as it existed prior to the enactment of chapter 27, supra, was subject to the just criticism that the burdens of sinking fund deficits created by the failure of taxing officers to perform their duty, or by the failure of taxpayers to pay their taxes, was shifted to the taxpayers of the future.

We decline to hold that our Constitution "prohibits by implication" the enactment of appropriate legislation to authorize the taxing officers to take care of the deficit prior to the due date of the obligation which the sinking fund was created to pay.

It is urged in opposition to the law in question that it permits an unequal distribution of the burden of bonded indebtedness throughout the intervening tax years, prior to maturity date of bonds. This objection may be urged to the wisdom of the law and not its legality. It should be made to the legislative and not to the judicial branch of the government. Statutes are not overthrown by courts because of the evil or asserted evil of their tendencies, unless they are repugnant to some provision of the Constitution. Mayor, etc., of City of Guthrie v. Territory ex rel., 1 Okla. 188, 31 P. 190.

In fairness to the legislation in question, it will be noted that provisions are made for the distribution of the burden of a deficit throughout the fiscal years intervening prior to maturity date of the obligation which the sinking fund was created to pay. In accordance with the principle of equal distribution heretofore recognized by this court in Going, Co. Treas., v. A., T. & S. F. R. Co., and other cases cited, supra, we hold that this burden must be evenly distributed over the fiscal years occurring after the appearance of a deficit and prior to the maturity date of the sinking fund obligation.

We further hold that the failure of taxing officials to make a levy for a proper proportionate part of an existing deficit during one of the years accruing after the appearance of such deficit, does not authorize an increase of the additional levy in the subsequent years prior to maturity of the sinking fund obligation.

We therefore conclude that, since the portion of the law in question is not repugnant to the provisions of our Constitution, it should be approved by this court. Authorities from other jurisdictions treating similar questions in connection with similar constitutional provisions, and recognizing principles similar to those herein held to govern, are State ex rel. Proctor et al. v. Walker (Mo.) 92 S. W. 69; State ex rel. City of Carthage v. Gordon (Mo.) 116 S. W. 1099; State ex rel. Johnson v. St. Louis-San Francisco Ry. Co. (Mo.) 286 S. W. 360; Epping v. City of Columbus (Ga.) 43 S. E. 803.

The Court of Tax Review is directed to enter judgment in favor of the protestee on the items of protest in King and Brown townships in Stephens county.

We shall next consider an item of protest involving the general fund of the town of Comanche. That municipality won a lawsuit during the fiscal year of 1932-33 from which it derived the sum of $625. In preparing its estimated needs and probable income from sources other than ad valorem taxes for the fiscal year of 1933 and 1934, that municipality estimated that it would receive a similar sum as probable income from the same source during that year. This item was protested and the protest sustained by the Court of Tax Review. The evidence in the record sustains the view that there was no reasonable probability of the municipality realizing on this source of estimated income. The statute (sec. 12674, O. S.

1931) only authorizes the municipal authorities to set up items of "probable income." This asserted income was not probable. It was not contemplated by section 12674, supra, that municipalities set up as estimated income from sources other than ad valorem taxes, items of anticipated revenue which there is no reasonable probability of receiving.

It is urged by the protestee that the income from other sources would probably increase during its fiscal year, and that such possible increase would counteract any failure to realize on the item of income estimated from litigation. The fallacy of this contention is that the statement of estimated income as submitted to and approved by the excise board does not anticipate such an increase. If an anticipated increase in such other sources of income had been reflected on the submitted and approved statement, we would be concerned only with an application of that portion of section 12678, O. S. 1931, as amended by chapter 85, S. L. 1933, providing, "that in no event shall the amount of such estimated income exceed the actual collection from such sources for the previous fiscal year." An entirely different question would then be presented. The inclusion of an improbable item of estimated income could not be justified on the theory that income not shown on the statement to be anticipated might be received.

The decision of the Court of Tax Review on this item is sustained.

We next direct our attention to the third and last question involved in this case: The authority of a county to make a levy for a biennial audit fund to be used in paying the expenses of an audit of the needs and accounts of all the county, including the salaries and expenses of deputies of the State Examiner and Inspector while engaged in making such audit. Such a levy was made by the protestee herein. It was protested by the protestant on the theory that it was "a county levy made for state expenses." This protest was sustained by the Court of Tax Review.

Chapter 40, S. L. 1933, provides in substance that a biennial audit of all of the books, records, and accounts of county officers in each of the counties of the state shall be made by the State Examiner and Inspector or his duly appointed deputy or deputies. By the provisions of the act, the expense of such audit is to be borne by the county. Section 3 of the act provides:

"Salaries, traveling expenses, expenses for work sheets, supplies, typing and binding the report of audit, shall be paid from the special audit fund after filing properly itemized claim verified by attached receipts and approved by the State Examiner and Inspector, with the county clerk as provided by law for other claims against the county."

Section 5 of the act reads:

"The county excise board of each county of this state is hereby required to make an ad valorem tax levy of not to exceed one-tenth of a mill to be collected as other ad valorem taxes and to be known as and converted into a special county audit fund. Said levy shall be sufficient to meet the expenses of said biennial audit, and such levy for said purposes shall be in addition to the amount now provided by law for the general current expenses of said county, and said fund when so collected shall not be transferrable (sic) to any other fund or used for any other purpose. If for any reason, the proper officers of the county shall fail or refuse to make the said special biennial levy provided for herein and in an amount sufficient to defray the expenses of said audit within the limitations herein provided, any taxpayer residing within said county or subdivision of the state may compel the proper officers by a mandamus proceeding to make such provision for such levy for said purposes."

It is urged in support of the protest that the law in question violates that portion of section 9, art. 10, of our state Constitution, as amended at the special election of August 15, 1933, which constitutional amendment provides in part as follows:

"No ad valorem tax shall be levied for state purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this state be used for state purposes."

It is true that under this constitutional provision an ad valorem levy on taxable property cannot be made for state purposes. But is a levy for a county audit a state purpose? The purpose of the levy must be judged by the object to be accomplished thereby. The object of this act is to provide for an audit of the books of each county. An audit of the books of a particular county is a matter in which the other counties of the state have no particular interest. It is just as truly a county purpose as is keeping the records in county clerk's or county treasurer's office. It is none the less a county purpose because a state officer is charged with the duty of designating the persons who shall conduct the same, instead of some one of the county officers. The pur-

pose of the audit is the same as though it were supervised by some one of the county officers. There is no particular reason why all of the counties in the state should share the burden of expense of auditing the books of each of the other counties.

By virtue of the provisions of section 19 of art. 6 of our Constitution, the Legislature was authorized to prescribe other duties to be performed by the State Examiner and Inspector. By the enactment of chapter 40, S. L. 1933, other duties were added. The purpose of the added duties was for the particular benefit of individual counties as government subdivisions. Was the Legislature without authority to impose the burden of expense on the particular county benefited, because the agency designated to carry out the purpose of the law was a state official and his deputies? A similar question was considered and answered in the negative by this court in the case of Herndon v. Anderson, 165 Okla. 104, 25 P. (2d) 326. In that case we decided that the burden of supporting a superior court might properly be imposed upon a particular county in which the same is situated. In the opinion in that case, prepared for the court by Mr. Justice McNeill, in which the authorities were exhaustively reviewed, it was said:

"The serious question presented by this record is whether the respective counties can be compelled to bear the burden of maintaining a superior court created by the Legislature or whether this burden should be placed upon the state at large. This question involves the right of the Legislature to impose taxes between the general public and a political subdivision of the state.

"This question is entirely legislative and not judicial. The power of taxation and the power to apportion taxes are identical and inseparable. * * *

."The power to impose taxes is vested in the Legislature of the state. The apportionment of that tax is included in the power to impose taxes."

In another portion of the opinion it was said:

"It is to be observed that under section 20 of art. 10 of the Oklahoma Constitution, the power is reserved in the Legislature to confer upon the county the power to assess and collect taxes for the purposes of the county, and that the Legislature has the power to define and designate the purposes for which it authorized the county to assess and levy taxes."

The principles of law applied in the Hern-

don Case, supra, are applicable to the case at bar. The power to apportion taxes is legislative. The exercise of that power by the Legislature will not be disturbed unless constitutional limitations are exceeded. The purpose of a biennial audit of county books is a county as distinguished from a state purpose. The burden of bearing the expense of such an audit was by legislative act legally imposed on the county for whose benefit the audit is made. The legislation under consideration is not repugnant to any provision of our Constitution.

The decision of the Court of Tax Review on this item is reversed, with directions to deny the protest.

The case is remanded to the Court of Tax Review, with directions to enter its order in accord with the views herein expressed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, and WELCH, JJ., concur. ANDREWS, J., dissents. BAYLESS, J., absent.

ANDREWS, J. (dissenting). The provisions of section 9, article 10, of the Constitution limit the rate of taxation, except when the limitation therein contained is exceeded pursuant to other provisions of the Constitution. An analysis of those provisions discloses that the limitations contained in section 9, article 10, supra, may be exceeded only when the people authorize the same at an election pursuant to one of the several provisions of the Constitution authorizing such an increase, among which are sections 26 and 27, article 10 of the Constitution.

None of those provisions authorize an increase in the rate of levy limited by section 9, article 10, for the purpose of reimbursing a sinking fund, and, in my opinion, a tax levy for the purpose of reimbursing a sinking fund must come within the provisions of the limitation contained in section 9, article 10.

The opinion in this case holds that a sinking fund may be created pursuant to the provisions of sections 26, 27, and 28, article 10; that the maximum rate of levy authorized by section 9, article 10, may be levied and in addition thereto that a tax levy may be made for the purpose of reimbursing the sinking fund.

In my opinion that is contrary to the clear and unambiguous provisions of the Constitution. For that reason I dissent.

I do not desire to call attention to all of the manifest errors in the opinion. I content myself with calling attention to the provisions of section 7504, O. S. 1931, which are in direct conflict with one of the statements made in the opinion.