The Attorney General is in receipt of your request for an opinion wherein you state: "At the present time County Government is financed under the provisions of Article X, Section 9 of the Constitution of the State of Oklahoma. "In addition to county operations the counties are called upon to pay out of their ad valorem tax levy certain expenses of the office of the District Attorney, certain expenses of the Election Board, the total support of the Juvenile Bureaus and Detention Homes, certain expenses for crippled children and certain other welfare costs and food stamp costs mandated by the State. It would appear that all of the above costs and expenses are State costs. . . . "I refer you to the following Statutes, which appear to ask the County Governments of the State of Oklahoma to pay State expenses out of the ad valorem tax levy of the counties: Title 19 Section 215.14 Title 26 Title 10 Section 130.5 Title 10 Section 1207 Title 10 Section 175.10 Title 10 Section 175.11" You thereupon ask, in effect, the following question: Do the referenced statutes undertake to levy an ad valorem tax for a state purpose in violation of the Oklahoma Constitution, Article X, 9(a)? Title 19 O.S. 215.14 [19-215.14] (1979), provides that the salaries of assistant district attorneys: ". . . may be supplemented by the county in which they serve to allow assistant district attorneys to be paid up to but not exceeding ninety-five percent (95%) of the salary of the district attorney at the pleasure of the district attorney and with the approval of the Board of County Commissioners." Title 26 O.S. 3-104 [26-3-104] (1974), provides: "The cost of rent for polling places, ballot boxes, locks and keys, voting booths and United States flags shall be paid from county funds. In addition, the cost of central and precinct registries, maps and other materials required to be maintained by the county election board shall be paid from county funds . . ." Section 26 O.S. 3-105 [26-3-105] requires that all costs for any county election not held concurrently with a state election shall be paid from county funds. Title 10 O.S. 130.5 [10-130.5] (1971), provides that county homes established for the detention of delinquent juveniles shall operate as an agency of the court, and that: ". . . The operation and maintenance costs including salaries of all employees appointed for the operation of the Home shall be paid monthly out of the General Revenue Fund of the county . . . ." Title 10 O.S. 1207 [10-1207] (1979), provides that the salary of the director and other employees of the Bureau and Detention Home shall be fixed by the judge of the Juvenile Division, and that: "(d) In all counties having a Juvenile Bureau, the budget of the Juvenile Bureau for salaries and expenses of the director, counselors and other employees shall be established and funded as follows: All expenses incurred in complying with the provisions of this act shall be a county charge . . . ." The Oklahoma Crippled Children's Act "Act", 10 O.S. 172.17 [10-172.17], 10 O.S. 172.18 [10-172.18], 173 and 10 O.S. 175.1 [10-175.1] (1971) et seq., declares a legislative intent to provide for a more efficient administration of the crippled children's program, to provide for a continuity of dependable funds for a program of medical care for crippled children, and: ". . . to cooperate with counties and all public and private agencies and institutions interested in the care of children in making county funds and resources of these public and private agencies and institutions available for the care of such children . . . ." 10 O.S. 175.1 [10-175.1] (1971). Section 10 O.S. 175.4 [10-175.4] [10-175.4] designates the Oklahoma Public Welfare Commission "Commission" as an "agency of the State responsible for and having authority for the administration and operation of the program of the services" for crippled children as stated in 175.5 of the Act. Section 10 O.S. 175.5 [10-175.5](e) authorizes and directs the Director of Public Welfare "Director" to perform all the duties and functions previously performed by the Oklahoma Commission for Crippled Children and such other duties as may be assigned to the Director by the Commission. The Director is further authorized and directed to set up in the Department of Public Welfare a unit to be charged with responsibility for health services for crippled children. Section 10 O.S. 175.5 [10-175.5](e) continues: ". . . The Director is hereby authorized to delegate to the Supervisor of such unit of the Department such authority as is necessary under the laws of the Federal Government and rules and regulations promulgated by the Secretary of Health, Education and Welfare, necessary to carry out the provisions of this Act, subject to the administrative supervision of the Director." Section 10 O.S. 175.5 [10-175.5](g) authorizes the Commission to provide for the expenditure of all funds for the administration and operation of the program specified in the Act. The Commission is empowered to contract for services of hospitals, convalescent homes, boarding homes, nursing homes and foster homes pursuant to 175.7. Section 10 O.S. 175.8 [10-175.8] provides in pertinent part: "(b) All monies, except reimbursement for expenditures from Federal sources, collected by the Commission through the authority of this Act, from parents, other persons, agencies, or counties shall be deposited with the State Treasurer, who shall act as custodian thereof, and shall keep such funds in a revolving fund to be known by the title of 'State Crippled Children's Fund,' and these funds are hereby appropriated for the purposes specified in this Act and shall be disbursed upon claims approved by the Director and filed with the Budget Director for payment." Emphasis added Section 10 O.S. 175.10 [10-175.10] provides that applications for crippled children's services on behalf of a child may be made directly to the Public Welfare Commission, and that any charges for services provided by the Commission become payable from the respective children's budget account. The Crippled Children's Budget Account is an appropriation established by 10 O.S. 175.11 [10-175.11] as follows: "It shall be the mandatory duty of the board of county commissioners of each county of the State of Oklahoma to include in their respective estimates, and of the excise board of each county of the State of Oklahoma to appropriate for each fiscal year hereafter a sum equal to not less than the net proceeds of one-fifth (1/5) of one mill on the assessed valuation of their respective counties. Said appropriation is to be included within the regular county general fund appropriation for current expenses and set aside to care for the children accepted by the Commission upon application by the respective county welfare director as provided in Section 175.10 of this Title. This appropriation shall be known as the Crippled Children's Budget Account . . . . Claims filed by the Commission for payment by the county shall be sent to the respective county clerk and shall be allowed by the respective board of county commissioners if the same are found to be in keeping with the provisions of this act. . . ." The Oklahoma Constitution, Article X, Section 2 provides: "The Legislature shall provide by law for an annual tax sufficient with other resources, to defray the estimated ordinary expenses of the State for each fiscal year." Section Article X, Section 3 provides: "Whenever the expenses of any fiscal year shall exceed the income, the Legislature may provide for levying a tax for the ensuing fiscal year, which, with other resources, shall be sufficient to pay the deficiency, as well as the estimated ordinary expenses of the State for the ensuing year." Section Article X, Section 9 provides in pertinent part: "(a) Except as herein otherwise provided, the total taxes for all purposes on an ad valorem basis shall not exceed, in any taxable year, fifteen (15) mills on the dollar, no less than five (5) mills of which is hereby apportioned for school district purposes, the remainder to be apportioned between county, city, town and school district, by the County Excise Board, until such time as a regular apportionment thereof is otherwise provided for by the Legislature. "No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this State be used for State purposes." Emphasis added State ex rel. Blankenship v. Atoka County, 456 P.2d 537 (Okl. 1969), was an original action for mandamus brought by the State of Oklahoma on the relation of the Attorney General against the boards of county commissioners and the excise boards of Atoka and Coal Counties. The action was brought to compel the respective county boards to make supplemental appropriations for a portion of the salaries of an investigating officer and secretary for the district attorney, and to require the boards of county commissioners in those counties to approve claims to pay one-half of the salaries of one assistant district attorney in each of those counties, as well as their respective shares of the salaries of an investigator and secretary. The Court held that 19 O.S. 215.14 [19-215.14] and 19 O.S. 215.15 [19-215.15] (1968), did not offend Article 10, 9, of the Oklahoma Constitution. The Court stated: "While a county attorney performed many state and county functions prior to and after the adoption of Article X, Section 9 as amended in 1933, no one has contended that it was unlawful to pay the salary of a county attorney with ad valorem tax revenues, or that the financial burdens of county government, as auxiliary to State government, were shifted to the state by the adoption of the amendment. "The District Attorney and his deputies defend and prosecute all actions in which the counties of his district are interested and give legal advice to county officials. 19 O.S. 215.4 [19-215.4], 19 O.S. 215.5 [19-215.5] and 19 O.S. 215.16 [19-215.16] (1968). In Excise Board of Stephens County v. Chicago, R.I. P. Ry. Co., 168 Okl. 523, 34 P.2d 268, we held that an ad valorem tax levied for the purpose of financing a biennial county audit did not offend Article X, Section 9 Const., since the audit was for the benefit of the county. In the body of that opinion we said: 'The purpose of the levy must be judged by the object to be accomplished thereby.' In the instant case the object to be accomplished by the District Attorney Act was to obtain a more effective performance of the duties theretofore imposed upon the county attorney. We hold that Section 19 O.S. 215.14 [19-215.14], supra, requiring Atoka and Coal Counties to pay one-half of the salaries of one Assistant District Attorney in their respective counties does not offend Art.X, Sec. 9, Oklahoma Constitution. . . . "We are of the opinion that the employees of the District Attorney, authorized by Section 19 O.S. 215.15 [19-215.15], as amended in 1968, to be appointed by the District Attorney to serve the entire district, are performing functions which were originally cast upon county attorneys. Each county of the district obtains their services and is assisted thereby. The Statutory arrangement for the payment of their salaries by the counties benefitted does not offend Art.10, Sec. 9, Okla. Const." Excise Board of Ottawa County v. St. Louis-San Francisco Ry. Co., 176 Okl. 641, 57 P.2d 261
(1936), arose out of a protest filed in the Court of Tax Review against a tax levy made for a county general fund. The protestant alleged that the appropriations included a sum for refund to the state for relief paid to adult blind pursuant to state legislation, and that such legislation was an unconstitutional attempt to provide for the payment by counties, for state purposes, in violation of the Oklahoma Constitution, Article X, Section 9 and is made a state duty and charge by Article 21 of the Oklahoma Constitution. The Court of Tax Review agreed and held the act unconstitutional. The Supreme Court reversed, holding: "Apparently the trial court was confused by reason of the fact that a state commission performs some duties in carrying into effect the provisions of this act. However, its duties are purely ministerial, and are performed only in execution of the order of the county judge. It is not authorized to create any obligations against the county. Its functions do not make the levy in question one for a state purpose. In the case of Excise Board of Stephens County v. Chicago, R. I. P. Ry. Co.,168 Okl. 523, 34 P.(2d) 268, 272, the protestants contended that a levy made under the provisions of the biennial county audit law (chapter 40, Session Laws 1933) was for a state purpose, and thus violated section 9, art. 10, Oklahoma Constitution, as amended. In this respect the court said: 'It is true that under this constitutional provision an ad valorem levy on taxable property cannot be made for state purposes. But is a levy for a county audit a state purpose? The purpose of the levy must be judged by the object to be accomplished thereby. The object of this act is to provide for an audit of the books of each county. An audit of the books of a particular county is a matter in which the other counties of the state have no particular interest. It is just as truly a county purpose as is keeping the records in county clerk or county treasurer's office. It is none the less a county purpose because a state officer is charged with the duty of designating the persons who shall conduct the same, instead of some one of the county officers . . .' "The care of indigent blind persons is a duty imposed upon the respective counties of which they are inhabitants by Article XVII, Section 3 Oklahoma Constitution. It is a county function to be performed in the manner prescribed by the Legislature . . . The object to be accomplished thereby is a compliance with said constitutional provisions, and taxes levied in that respect are therefore for a county purpose, and are not for a state purpose, although the Legislature has designated a state agency to perform ministerial duties in order that this county function may be properly exercised. Said act does not violate either section 9, art. 10, Oklahoma Constitution, as amended in 1933, or article 21, Oklahoma Constitution, and is a valid legislative enactment." Herndon v. Anderson, 165 Okl. 104, 25 P.2d 326 (1933), involved a taxpayer protest against the payment of the salary of the Judge of the Superior Court of Garfield County. The protest was filed before the Board of County Commissioners who denied the protest. Appeal was taken to the District Court of Garfield County. The trial court held that a provision in legislation requiring that the salary of the judge of the superior court be paid by the county out of its court fund was unconstitutional under Article X, Section 9. That portion of the judgment was reversed on appeal. The Supreme Court stated: "We consider the act creating the superior courts of this state a valid legislative enactment. The question of placing the burden of maintaining this court located in a county having the requisite population is a matter peculiarly and exclusively within the wisdom of the Legislature. The Legislature had the right to consider the benefits accruing to inhabitants of the specific counties where said courts are maintained in an endeavor to equitably apportion the common burden of taxation in the state. Unquestionably the court exercises both state and county functions. The creating of such a court blends the interests of the county in this institution, and at the same time it exercises judicial functions which are not exclusively confined to a local purpose but which on the contrary affect the state at large . . . Unquestionably citizens of such a county would derive some benefit at least beyond that which was derived by the citizens of the state in general . . . ." These decisions are dispositive with respect to 19 O.S. 215.14 [19-215.14] (1979), relating to specified operating expenses of the office of the District Attorney; 26 O.S. 3-104 [26-3-104], 26 O.S. 3-105 [26-3-105] relating to costs incurred by county election boards; 10 O.S. 130.5 [10-130.5] (1971), relating to operating and maintenance costs incurred in the operation of county homes established for the detention of delinquent juveniles; and 10 O.S.Supp. 1979, 1207, relating to budgetary expenses of bureau and detention homes fixed by the judges of the Juvenile Divisions of the District Courts for the counties. In enacting each of the statutes "the Legislature had the right to consider the benefits accruing to inhabitants of the specific counties" where the respective offices, boards, courts and detention homes established under such courts are maintained. Herndon v. Anderson, supra. Accordingly, the prevailing case authorities do not afford a basis for concluding that any of those statutes are violative of Article X, Section 9(a) of the Oklahoma Constitution. Analysis of 10 O.S. 175.10 [10-175.10] and 10 O.S. 175.11 [10-175.11] (1971), however, requires that Article 10, 9(a), be considered in conjunction with other pertinent provisions of the Oklahoma Constitution. The Oklahoma Constitution, provides in Article XVII, Section 3 : "The several counties of the State shall provide, as may be prescribed by law, for those inhabitants who, by reason of age, infirmity, or misfortune, may have claims upon the sympathy and aid of the county." Article XXI, Section 1 provides: "Educational, reformatory, and penal institutions and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the State in such manner as may be prescribed by law." Board of Commissioners of Logan County v. State ex rel. Short, 122 Okl. 268, 254 P. 710 (1927), considered a constitutional challenge to a 1917 act of the Legislature providing that charges for the care of mental patients in state hospitals be paid by the county in which the patient resided. The Court held that the portions of the legislative enactments which attempt to make the respective counties liable for a portion of the expense of supporting patients from such counties in state hospitals conflict with Article XXI, Section 1 of the Oklahoma Constitution, and for that reason are void. The Court stated: ". . . The Constitution, of course, does not expressly inhibit the power the Legislature has assumed to exercise, but an express inhibition is not necessary. The affirmation of a distinct policy upon any specific point in a state Constitution implies the negation of any power in the Legislature to establish a different policy. The presumption is that the positive provisions of a Constitution are mandatory, and not merely directory, and there is nothing to overcome this presumption, as to the provisions under consideration . . . * * * "We must conclude, therefore, that it is the duty of the state, not only to establish such hospitals for the insane, but also to support or sustain such hospitals, and to 'supply them with funds for the means of continuing,' and that any attempt of the Legislature to require the counties of the state to support and maintain such hospitals, or any patients therein, is contrary to the intention of the Constitution, and is void." 254 P. 712. Chicago, R. I. P. Ry, Co. v. Excise Board of Stephens County, 168 Okl. 519, 34 P.2d 274 (1934), involved a taxpayer protest against a levy of a county excise board for the crippled children's fund of the county. The levy was made pursuant to legislative authorization and direction, and the protest thereto was based on Article X, Section 9 and Article XXI, Section 1 of the Oklahoma Constitution. The protestant contended that a portion of the fund created by the levy may be used to maintain and support the University Hospital, a state institution. The Supreme Court affirmed a decision of the Court of Tax Review denying the protest on the grounds that the provisions of the legislative enactment under consideration were severable, and that the operative portions were not dependent for their effectiveness upon the invalid provisions. The Court specifically held, however, that no portion of the crippled children's fund could be paid by the county to the State University for the maintenance of University Hospital. The Court stated: ". . . In so far as the act by implication may be said to authorize the payment of any part of the crippled children's fund to the University Hospital, a state institution, for the care of crippled children, the same violates the provisions of article 21, supra, and is unconstitutional and void . . . ." 34 P.2d 276. Battles v. State ex rel. Oklahoma Commission for Crippled Children,244 P.2d 320 (Okl. 1952), was an appeal from a district court judgment ordering issuance of writ of mandamus requiring a county excise board to comply with the provisions of the Crippled Children's Act relative to the appropriation of revenue from ad valorem taxes as required by 10 O.S. 172.13 [10-172.13]. The statute under consideration in that case is almost identical, and, in fact, is the predecessor of 10 O.S. 175.11 [10-175.11] (1971). The statute considered in Battles v. State, supra, is cited in full at 244 P.2d 321, as follows: "Section 172.13 of Title 10 O.S.Supp. 1949 provides: 'It shall be the mandatory duty of the board of county commissioners of each county of the State of Oklahoma to include in their respective estimates, and of the excise board of each county of the State of Oklahoma to appropriate for each fiscal year hereafter a sum equal to not less than the net proceeds of one fifth (1/5) of one mill on the assessed valuation of their respective counties. Said appropriation is to be included within the regular county general fund appropriation for current expenses and set aside to care for the children accepted by the Commission upon application by the respective county court as provided in Section 12 of this Act (10 O.S. 1949 Supp., 172.12 [10-172.12]). This appropriation shall be known as the Crippled Children's Budget Account, and it shall be unlawful to use said Budget Account for any purpose other than those authorized in this Act (10 O.S. 1949 Supp., 172.1 [10-172.1] through 172.16). No county shall be liable for any charge beyond the respective Crippled Children's Budget Account of the fiscal year and no more than twenty (20%) per cent of the total Crippled Children's Budget Account of any one county may be expended for any one patient during any fiscal year. Claims filed by the Commission for payment by the county shall be sent to the respective county clerk and shall be allowed by the respective board of county commissioners if the same are found to be in keeping with the provisions of this Act.' " The Supreme Court reversed the judgment of the district court and recalled the writ of mandamus issued by the district court to compel the county excise board to comply with 10 O.S. 172.13 [10-172.13], supra. The holding was predicated upon the Court's conclusion that the primary purpose of enacting 10 O.S. 172.13 [10-172.13] was to require the counties to provide a fund which the Oklahoma Commission for Crippled Children could use for reimbursement of expenditures or "expense of the patient's care and treatment in the University Hospital until the county fund becomes exhausted." Chicago R. I. 
P. Ry, Co. v. Excise Board of Stephens County, supra. The Court held that the statute could not be justified under Article XVII, Section 3 of the Oklahoma Constitution. The Supreme Court stated: ". . . under the provisions of the present act, all claims are paid by the Crippled Children's Commission and it in turn must file claim for reimbursement. In such circumstances, the amount of such appropriation actually paid to the state institution would not necessarily be subject to identification. A study of the two acts in the light of the opinion in the Stephens County case, above cited, would indicate that the present act was so framed that it would accomplish, indirectly, those results which this court held, in the Stephens County case, could not be done directly . . . . The provisions of sections 14 and 15 of the Crippled Children's Act, 10 O.S. 1949 Supp., 172.14 [10-172.14] and 172.15, indicate that practically all of the funds provided for by section 13, 10 O.S. 1949 Supp., 172.33 [10-172.33] are required to be used to reimburse the commission for payments made by it to the University Hospital or Oklahoma Hospital for Crippled Children, a state institution, in violation of the State Constitution. Article XXI." 244 P.2d 323. Title 10 O.S. 175.11 [10-175.11] (1971), imposes a "mandatory duty" on the board of county commissioners of each county to include in their estimates, and on the excise board of each county to make an appropriation for the "care for the children accepted by the Commission." Section 175.11 is framed to accomplish indirectly results which the Supreme Court held could not be done directly in Chicago R. 1. P. Ry. Co. v. Excise Board of Stephens County, supra. See Battles v. State ex rel. Oklahoma Commission for Crippled Chidden, supra, at 244 P.2d 323. The authority of the Commission to contract for the services of hospitals, convalescent homes, boarding homes, nursing homes and foster homes under 10 O.S. 175.7 [10-175.7] is the successor of institutions which the Oklahoma Constitution, Article XXI, Section 1
requires the State to establish and support for the public good. The establishment of such institutions by the State may be "in such manner" as is prescribed by law. Irrespective of whether the manner prescribed by 175.7 constitutes an establishment of an institution within the meaning of Art. 21, 1, does not exhaust the question of whether 10 O.S. 175.11 [10-175.11] (1971), is constitutional. Art. 10, 9(a), must also be considered. County excise boards are required to appropriate a portion of ad valorem tax proceeds for an object which 10 O.S. 175.1 [10-175.1] (1971) et seq., and Art. 21, 1, of the Oklahoma Constitution, clearly designate as a state purpose. Section 175.11 imposes a "mandatory duty" upon counties to levy an ad valorem tax for a state purpose, and the imposition of such a duty violates Article X, Section 9(a). It is, therefore, the official opinion of the Attorney General that your question be answered as follows: 1. The Oklahoma Constitution, Article X, Section 9(a), is not violated by Title 19 O.S. 215.14 [19-215.14] (1979), relating to operating expenses of the office of the district attorney; 26 O.S. 3-104 [26-3-104], 26 O.S. 3-105 [26-3-105] (1974), relating to costs incurred by county election boards; 10 O.S. 130.5 [10-130.5] (1971), relating to the operation and maintenance of homes established for the detention of juveniles; or 10 O.S. 1207 [10-1207] (1979), relating to budgetary expenses of homes existing under the juvenile divisions of the district court within the county. 2. Title 10 O.S. 175.11 [10-175.11] (1971), imposing a mandatory duty on county excise boards to appropriate the net proceeds of a specified portion on the assessed valuation of their respective counties to are for crippled children accepted by the Oklahoma Public Welfare Commission, results in a levy of ad valorem taxes for state purposes, and violates the Oklahoma Constitution, Article X, Section 9(a). (John Paul Johnson) ** See: Opinion No. 88-010 (1988) **