Dear District Attorney May,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. May ad valorem taxes be levied to provide funds for thesupport, organization, operation and maintenance of an EmergencyMedical Service District ambulance service in excess of the 3mills authorized by Article X, Section 9C of the OklahomaConstitution?
 2. May an Emergency Medical Service District, created pursuantto Okla. Const. art. X, § 9C, be obligated by the voters at thetime of its creation to commit its ad valorem tax revenues to apublic trust for ambulance services, within the boundaries of theEmergency Medical Service District?
 3. If the answer to question 2 is yes, is it necessary topropose this obligation in the ballot question creating theEmergency Medical Service District?
 4. May a county levy a 5 mill ad valorem tax to support theoperational expenses of an ambulance service administered by apublic trust?
 Nature Of Emergency Medical Service Districts
¶ 1 Oklahoma law authorizes both statutory and constitutional methods for providing ambulance services to Oklahoma residents. The various methods of affording ambulance services are intended to meet the individual needs of Oklahoma residents. Some are restricted to county boundaries while others allow for the creation of districts including more than one county.
¶ 2 Article X, Section 9C of the Oklahoma Constitution authorizes Emergency Medical Service Districts to provide ambulance services, and directs the operation of those districts. These districts are created through elections called by the board of county commissioners, or boards if more than one county is involved. Okla. Const. art. X, § 9C(a). All registered voters in the area to be covered are entitled to vote as to whether such district should be formed, and at the same time authorize a tax levy not to exceed three mills for the purpose of providing funds for the "purpose of support, organization, operation and maintenance of district ambulance services, known as emergency medical service districts." Id.
¶ 3 Each district is required to have a board of trustees composed of not less than five members. Id. The board of trustees has the power and duty to "adopt such rules, procedures and contract provisions necessary to carry out the purposes and objectives" of the constitutional provisions creating the district. Id.
¶ 4 In 1996, the Oklahoma legislature enacted laws establishing a comprehensive budget plan for Emergency Medical Service Districts. Codified at 19 O.S. 2001, §§ 1701-1723[19-1701-1723], the Emergency Medical Service District Budget Act provides for the creation of a general fund, a sinking fund and funding for other legal purposes for the district. 19 O.S. 2001, § 1711[19-1711].
¶ 5 In addition to the specific constitutional mechanism for creating Emergency Medical Service Districts, ambulance services may be provided through other means in certain situations. For example, a county may create a rural ambulance service district in accordance with 19 O.S. 2001, §§ 1201-1221[19-1201-1221], which provides ambulance service to meet the needs of those rural residents without ambulance service. A Supplemental Emergency Services District may also be formed through the State Department of Health in accordance with 63 O.S. 2001, §§ 1-2517-1-2521[63-1-2517-1-2521],
to contract for provision of emergency medical services to those areas contiguous to the border between Oklahoma and neighboring states, which experience a shortage of emergency medical services available from municipalities and service districts. Id. § 1-2518(1). A county may also contract for ambulance service with "any city, town, county, person, firm or corporation or combination of them under such terms and conditions as may be agreed upon between the parties." 19 O.S. 2001, § 371[19-371] (a). The Legislature has also authorized counties to contract for ambulance services with "the state or any of its agencies or any other municipality, county, person, firm, or corporation or combination thereof" under the Interlocal Cooperation Act (74 O.S. 2001, §§ 1001-1008[74-1001-1008]). 11 O.S. 2001, § 23-105[11-23-105] (A).
 I. The Funding Of Constitutionally-created Emergency Medical Service Districts
¶ 6 Your first question concerns those districts created by the Oklahoma Constitution at Article X, § 9C. You initially ask whether ad valorem taxes may be levied for the operational expenses of ambulance services in excess of the 3 mills authorized by the Constitution. The constitutional provisions governing Emergency Medical Service Districts specifically discuss funding of ambulance services. Okla. Const. art. X, § 9C(a) limits the tax levy to three (3) mills by providing:
 All registered voters in such area shall be entitled to vote, as to whether or not such district shall be formed, and at the same time and in the same question authorize a tax levy not to exceed three (3) mills for the purpose of providing funds for the purpose of support, organization, operation and maintenance of district ambulance services, known as emergency medical service districts and hereinafter referred to as "districts." If the formation of the district and the mill levy is approved by a majority of the votes cast, a special annual recurring ad valorem tax levy of not more than three (3) mills on the dollar of the assessed valuation of all taxable property in the district shall be levied. The number of mills shall be set forth in the election proclamation, and may be increased in a later election, not to exceed a total levy of three (3) mills. This special levy shall be in addition to all other levies and when authorized shall be made each fiscal year thereafter.
Id. (emphasis added). In addition to this section, subsection (g) of Section 9C evinces an intent to restrict the amount of ad valorem taxes as follows:
 In the event the mill levy as set forth in the original election proclamation is less than three (3) mills, the board of trustees may request the county commissioners to call a subsequent election to consider increasing the mill levy; provided, however, the total levy authorized by subsection (a) hereof shall not exceed three (3) mills.
Id. (emphasis added).
¶ 7 The constitutional provision also authorizes any district board of trustees to issues bonds "for the purpose of acquiring emergency vehicles and other equipment and maintaining and housing the [vehicles and equipment]" if approved by a majority vote at a special election held for such purpose. Okla. Const. art. X, § 9C(b). The Constitution specifically provides at Section 9C(d):
 Any district board of trustees, upon issuing bonds as authorized in subsection (b) of this section, shall levy a special annual ad valorem tax upon the property within the district, payable annually, in a total amount not to exceed three (3) mills on the dollar, on the real and personal taxable property in such district, for the payment of principal and interest on outstanding bonds, until same are paid. However, the trustees may, from time to time, suspend the collection of such annual levy when not required for the payment of the bonds. In no event shall the real and personal taxable property in any city or town be subject to a special tax in excess of three (3) mills for the payment of bonds issued hereunder.
Id.
¶ 8 Thus, if bonds are issued "for the purpose of acquiring emergency vehicles and other equipment and maintaining and housing the same," a special annual ad valorem tax shall be levied for the payment of principal and interest on outstanding bonds. Okla. Const. art. X, § 9C(b). This tax levy is in addition to the three (3) mills authorized under Section 9C(a) for the "support, organization, operation and maintenance of district ambulance services."
¶ 9 Section 9C(b) recognizes that it is the responsibility of the board of trustees to issue bonds. This section provides that "[a]ny district board of trustees may issues bonds, if approved by a majority vote at a special election for such purpose. All registered voters within the designated district shall have the right to vote in [the] election." Id. As the issuance of bonds is the responsibility of the board, the district must have been created and the board of trustees established prior to any bond issuance. The election held for the purpose of determining whether to issue bonds cannot be held at the same time and in the same election in which the district is created. Bonds may be issued by a majority vote after the district has been established, but they may not be issued in conjunction with the creation of the district. Therefore, no ad valorem tax may be levied for the payment of principal and interest on the bonds at the same time the district is created.
¶ 10 The Constitution also provides for other types of funding for Emergency Medical Service Districts. Specifically, Okla. Const. art. X, § 9C(i) empowers the districts to "charge fees for services, and accept gifts, funds or grants from sources other than the mill levy, which shall be used and accounted for in a like manner." Subsection (i) also allows the districts to charge those served outside the district "an amount equal to the actual costs for the service, not taking into account any income the district receives from millage or sources within the district."
¶ 11 These provisions establish the funding mechanisms for Emergency Medical Service Districts created pursuant to Okla. Const. art. X, § 9C. While a board of trustees may issue bonds for "acquiring emergency vehicles and other equipment and maintaining and housing the same," (Okla. Const. art. X, § 9C(b)) if approved by a majority vote at a special election, and shall levy a special ad valorem tax for principal and interest payments on the bonds, no provision allows for levying ad valorem taxes in excess of the three (3) mills authorized by Section 9C(a) for operational expenses. We interpret the constitutional provision to mean exactly what it says: that ad valorem taxes may not be levied in excess of the three (3) mills authorized by Section 9C (a) for the "support, organization, operation and maintenance of district ambulance services [districts]" created pursuant to that constitutional provision.
 II. The Creation Of A Public Trust To Provide Ambulance Services
¶ 12 You next ask whether an Emergency Medical Service District may be obligated by the voters at the time of its creation to commit its ad valorem tax revenues to a public trust for ambulance services within the boundaries of the Emergency Medical Service District. To answer your question, a review of the creation of public trusts is in order.
¶ 13 Title 60 O.S. 2001, § 176[60-176] governs the creation of public trusts and allows trusts to be created to further public functions. Section 176(A) reads:[1]
 Express trusts may be created to issue obligations and to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state or of any county or municipality or any and all combinations thereof, in real or personal property, or either or both, or in any estate or interest in either or both, with the state, or any county or municipality or any and all combinations thereof, as the beneficiary thereof by:
 1. The express approval of the Legislature and the Governor if the State of Oklahoma is the beneficiary;
 2. The express approval of two-thirds (2/3) of the membership of the governing body of the beneficiary if a county is a beneficiary;
 3. The express approval of two-thirds (2/3) of the membership of the governing body of the beneficiary if a municipality is a beneficiary; or
 4. The express approval of two-thirds (2/3) of the membership of the governing body of each beneficiary in the event a trust has more than one beneficiary; provided, that no funds of a beneficiary derived from sources other than the trust property, or the operation thereof, shall be charged with or expended for the execution of the trust, except by express action of the legislative authority of the beneficiary prior to the charging or expending of the funds. The officers or any other governmental agencies or authorities having the custody, management, or control of any property, real or personal or mixed, of the beneficiary of the trust, or of a proposed trust, which property shall be needful for the execution of the trust purposes, are authorized and empowered to lease the property for those purposes, after the acceptance of the beneficial interest therein by the beneficiary as hereinafter provided.
Id. (emphasis added).
¶ 14 For purposes of this Opinion, the question is whether a public trust may be created to perform the function of providing county ambulance service. As set forth above, express trusts may be created to provide funds for the furtherance and accomplishment of authorized public functions. The parameters under which public trusts may operate was explained in Board ofCounty Commissioners v. Warram, 285 P.2d 1034 (Okla. 1955). The court, when confronted with the question of whether a county may properly be the beneficiary of a trust for the performance of functions which the county has not been expressly authorized to perform in its own name, stated:
 We think that when the Legislature assigned a field of governmental action to a State subdivision, here a county, as has been done as to fire protection, water distribution and sewerage, but has provided only a single method for the county to perform such functions, the character of the functions is not limited to the single method provided, but that the Legislature may properly provide for other methods of attaining the same purposes.
Id. at 1040.
¶ 15 In discussing "authorized and proper" functions, the court further stated:
 If a trust may be created for the furtherance of any `authorized or proper' function of a county, and counties are expressly authorized to function in the fields of furnishing water, fire protection and sewerage services for its inhabitants, and section 176, supra, provides that trusts may be created to perform `authorized or proper' functions with the county as beneficiary, we find no objection to the view that trusts are authorized by section 176 to perform authorized and proper functions of counties, and that the word `proper' means additional methods which may be authorized by the Legislature as was done by section 176 as pointed out above.
Id.
¶ 16 The court reaffirmed its position in Shipp v.Southeastern Oklahoma Industries Authority, 498 P.2d 1395,1399 (Okla. 1972), noting that the State of Oklahoma, in performing its basic purposes and functions, "is invested with the authority to promote and encourage the development of industry and commerce within the state, and to further industrial, manufacturing, cultural, medical and/or educational activities within the state." These functions were found to be "authorized" functions of the State as that term is used in what is now 60 O.S. 2001, § 176[60-176]. Thus, the court found that a public trust with the State of Oklahoma as the beneficiary may be created for the purpose of performing those functions and/or providing funds for the performance of any of those functions.See also Tulsa County Deputy Sheriff's Fraternal Order of PoliceLodge No. 188 v. Bd. of County Comm'rs, 959 P.2d 979, 982
(Okla. 1998) (Tulsa County was free to "utilize any applicable method provided by the Legislature, including the creation of a public trust," to provide jail functions); Shotts v. Hugh,551 P.2d 252, 254 (Okla. 1976) (a public trust may be "established with a broad field of objectives as long as the objectives encompass a benefit to a large class of the public or lessen the burdens of government").
¶ 17 Thus, to answer the question of whether a county may create a public trust to provide ambulance services we must determine whether counties are empowered to provide ambulance service. Generally, the authority of a county is limited to those powers expressly granted by statute or such as are necessarily implied from express powers. Tulsa Exposition Fair Corp. v.Bd. of County Comm'rs, 468 P.2d 501, 507 (Okla. 1970). Furthermore, the board of county commissioners derives its power and authority solely from the statutes. Id. The Legislature has specifically provided that the board of county commissioners of any county may contract for ambulance services "with any city, town, county, person, firm or corporation or combination of them." 19 O.S. 2001, § 371[19-371] (a). The parties may agree upon the terms and conditions of the contract. Id. Counties may also enter into agreements pursuant to the Interlocal Cooperative Act to provide ambulance services. 11 O.S. 2001, § 23-105[11-23-105] (A). The board of county commissioners is also given the authority to create a rural ambulance service under certain situations. See19 O.S. 2001, §§ 1201-1221[19-1201-1221]. Each county in which any of the areas of a district is located shall pay its proportionate share of the cost of the district and such costs "shall be paid from the county treasury, but shall not exceed the equivalent of one (1) mill on each dollar of valuation in the district." Id. § 1210(A).
¶ 18 By resolution, counties may also request the State Commissioner of Health to establish a Supplemental Emergency Medical Services District for areas not covered by fast, efficient fire protection or emergency medical services provided by a municipality or other governmental body. See 63 O.S.2001, §§ 1-2517-1-2521[63-1-2517-1-2521]. Through the commissioner, the State Department of Health may enter into a contract with any emergency services provider to provide emergency medical services. Id. § 1-2521(A). Any such contract may include provisions permitting the emergency service provider to "collect fees for its services from recipients of [the] services in Oklahoma in an amount sufficient to cover the full cost of rendering [the] services."Id. § 1-2521(C).
¶ 19 As stated above the board of county commissioners is also given the authority to create an Emergency Medical Service District under Okla. Const. art. X, § 9C(a). However, if a district is created pursuant to that section, the specific terms of that constitutional provision apply, and the ad valorem mill levy is limited to three (3) mills. Id.
¶ 20 As the Legislature has given counties the authority to provide for ambulance service, there is no prohibition against establishing a public trust with the county as the beneficiary to provide those services. A public trust, therefore, may be created to provide ambulance service. That trust shall not "engage in any activity or transaction that is not expressly authorized in the instruments or articles prescribing its creation except by express consent of the governmental agency or governmental entity that created said public trust." 60 O.S. 2001, § 177.1[60-177.1];Shipp, 498 P.2d at 1399.
¶ 21 The activities or transactions of a public trust created pursuant to 60 O.S. 2001, § 176[60-176], to provide ambulance services, are limited to those terms set forth in the trust indenture or other instrument creating the trust and are distinct from an Emergency Medical Service District created pursuant to the Constitution. A public trust may not avail itself of the provisions constitutionally granted to districts established pursuant to Section 9C such as the levying of ad valorem taxes.
 III. The Authority Of An Emergency Medical Service District To Obligate Its Tax Revenues
¶ 22 Your third question asks whether an Emergency Medical Service District created pursuant to Okla. Const. art. X, § 9C
may be required, as a part of the proposal creating the district, to commit its three (3) mill ad valorem tax revenues to a public trust for ambulance services within the boundaries of the Emergency Medical Service District.
¶ 23 An Emergency Medical Service District is limited by Section 9C as to what it can and cannot do. It is also generally limited by Okla. Const. art. X, § 19 which provides that "no tax levied and collected for one purpose shall ever be devoted to another purpose." Taxes collected pursuant to Section 9C are to be used for the purpose of operating an Emergency Medical Service District created pursuant to that section. The responsibilities of a constitutionally-created Emergency Medical Service District are set forth in the constitutional provision. The districts are to be managed by boards of trustees who "have the power and duty to promulgate and adopt such rules, procedures and contract provisions necessary to carry out the purposes and objectives of these provisions." Okla. Const. art. X, 9C(a). The trustees have the additional power to "hire a manager and appropriate personnel, contract, organize, maintain or otherwise operate the emergency medical services within said district and such additional powers as may be authorized by the Legislature." Id.
Thus, taxes collected pursuant to Section 9C are to be used by the board of trustees whose duties are set forth in the Constitution. The board of trustees is vested with the responsibility of managing the district. Since the board is not constituted until approved by voters it has no legal existence, and thus may not be bound by the voters at the time the district is created to commit those taxes to a public trust.
¶ 24 The creation, expansion and dissolution of Emergency Medical Service Districts are governed explicitly by the Oklahoma Constitution. While there is no prohibition against the board of trustees of an Emergency Medical Service District using the district's ad valorem tax levy to contract with a public trust to provide ambulance services on a year-to-year basis, the responsibility for managing the district lies with the board of trustees and the voters may not, at the same time the district is created, obligate the board to commit the district's ad valorem taxes to a public trust.
 IV. The Propriety Of A Five (5) Mill Ad Valorem Tax Levy To Fund A Public Trust to Provide Ambulance Service
¶ 25 You last ask whether a public trust created to provide ambulance service may be funded through a five (5) mill ad valorem tax levy. The general constitutional provision governing ad valorem taxation provides that the "total taxes for all purposes on an ad valorem basis shall not exceed, in any taxable year, fifteen (15) mills on the dollar, no less than five (5) mills of which is hereby apportioned for school district purposes, the remainder to be apportioned between county, city,town and school district." Okla. Const. art. X, § 9(a)
(emphasis added). Thus, ad valorem taxes may fund county services on a year-to-year basis.
¶ 26 Several cases have discussed the concept of who may levy ad valorem taxes. In In re Erick Hospital District,444 P.2d 216 (Okla. 1968), the Supreme Court considered whether a provision of the Hospital District Act of 1967, providing for annual assessments on real property in the district to pay interest and principal on bonds, was constitutional. The court held that because the special improvement district provided for in the Hospital District Act was not a county, city, town, or school district, levying any ad valorem taxes for the purposes of the district was prohibited by the Constitution. Id. at 218-19. The court cited Thompson v. Rearick, 124 P. 951 (Okla. 1912) which held it was impermissible to levy ad valorem taxes for a road district created for the improvement of public highways. The road district was created as a "political corporation or subdivision of the state" and was not the successor of any county, city, township or school district. Id. at 952. Applying these principles, a public trust may not levy ad valorem taxes as doing so would be prohibited by the Constitution.
¶ 27 However, a county may properly use its ad valorem taxes levied pursuant to Okla. Const. art. X, § 9(a) to fund ambulance services. In Blankenship v. Atoka County, 456 P.2d 537 (Okla. 1969), superseded on other grounds by statute as stated inEthics Comm'n v. Cullison, 850 P.2d 1069, 1081 (Okla. 1993), an issue arose as to whether ad valorem taxes could be used to pay one-half the salaries of assistant district attorneys. Although assistant district attorneys are state employees for payroll purposes, because district attorneys and their assistants defend and prosecute all actions in which the counties of their district are interested and give legal advice to county officials, the court found that payment through ad valorem taxes did not offend Okla. Const. art. X, § 9. Blankenship,456 P.2d at 539-40. The court relied on its earlier opinion in ExciseBoard of Stephens County v. Chicago Rock Island Pacific RailwayCo., 34 P.2d 268, 273 (Okla. 1934) in which it held that the use of county ad valorem taxes to fund a biennial county audit was proper as the audit served a county purpose. See also Stateex rel. Dep't of Human Servs. v. Malibie, 630 P.2d 310, 318
(Okla. 1981) (using county ad valorem taxes to fund the Crippled Children's Fund violated Article X, § 9 as the program was a state program and the funds were being used for a state purpose);Pease v. Bd. of County Comm'rs, 550 P.2d 565, 568 (Okla. 1976) (using ad valorem taxes to pay for assessments against county for membership in council which provided joint services and facilities for mutual advantage of local governmental units was a county purpose); Excise Bd. v. St. Louis-San Francisco Ry.Co., 57 P.2d 261, 266-67 (Okla. 1936) (caring for indigent blind persons is a county function and therefore was a proper use of ad valorem taxes). These cases teach us that ad valorem taxes may be used for county purposes.
¶ 28 Because providing ambulance services is a proper function of the county, there is no prohibition against a portion of ad valorem taxes, allocated to a county on a year-to-year basis, being used to support ambulance services. It is important to recognize that a county may not levy additional ad valorem taxes for ambulance services, but that the taxes must come from the portion of the ad valorem taxes apportioned to the county in accordance with Okla. Const. art. X, § 9(a). The total of these ad valorem taxes for all purposes shall not exceed fifteen (15) mills, five (5) of which are apportioned for school district purposes, with the remainder to be apportioned between county, city, town and school district by the County Excise Board.
¶ 29 In summary, a public trust may not levy ad valorem taxes as a public trust is not a proper party to levy such taxes under Okla. Const. art. X, § 9. However, a portion of the county's ad valorem taxes levied on a year-to-year basis pursuant to Article X, § 9(a) may be used in providing ambulance services. In such situations, the provisions of 60 O.S. 2001, § 176[60-176] (A)(4) must be followed which require "express action of the legislative authority of the beneficiary prior to the charging or expending of the funds."
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Ad valorem taxes may not be levied in excess of three (3) mills for the "support, organization, operation and maintenance" of an Emergency Medical Service District created pursuant to Okla. Const. art. X, § 9C(a).
 2. After an Emergency Medical Service District has been created, bonds may be issued by the board of trustees if approved by a majority vote of the qualified electors of the district, voting at a special election for the purpose of acquiring, maintaining, and housing emergency vehicles and other equipment. Okla. Const. art. X, § 9C(b). An additional ad valorem tax not to exceed three (3) mills may be levied for the payment of principal and interest on outstanding bonds.
 3. A public trust may be created to perform the public function of providing ambulance service in accordance with 60 O.S. 2001, § 176. However, voters may not obligate an Emergency Medical Service District created pursuant to Okla. Const. art. X, § 9C at the time of its creation to commit its ad valorem tax revenues to a public trust for ambulance services.
 4. A portion of ad valorem taxes allocated to a county on a year-to-year basis pursuant to Okla. Const. art. X, 9(a) may be used to support the expenses of an ambulance service administered by a public trust. However, Section 9(a) requires that the total taxes for all purposes on an ad valorem basis shall not exceed fifteen (15) mills, five (5) of which are apportioned for school district purposes, with the remainder to be apportioned between the county, city, town and school district by the County Excise Board. A county may not levy an additional five (5) mills beyond that authorized by Okla. Const. art. X, § 9(a).
W.A. DREW EDMONDSON Attorney General of Oklahoma
SANDRA D. HOWARD Senior Assistant Attorney General
[1] See 2002 Okla. Sess. Laws ch. 33, § 1; 2002 Okla. Sess. Laws. ch. 39, § 1 (amending 60 O.S. 2001, § 176[60-176]). The modifications are not germane to the discussion here.