## BOARD OF COM'RS OF CARTER COUNTY v. LANDRUM.

No. 21546. Opinion Filed March 14, 1933.

Rehearing Denied May 2, 1933.

Earl Appleton Brown, for plaintiff in error.

John L. Hodge, for defendant in error.

RILEY, C. J. This is an appeal from a judgment rendered against the board of county commissioners of Carter county in favor of defendant in error on certain claims against the county for work and labor done and performed on the county highways of said county, and in a machine or repair shop maintained by the county for the repair of road machinery owned by it and used upon the county highways. The claims were assigned by the several laborers to defendant in error, who brought the action.

The cause was tried to the court without a jury, resulting in a judgment for plaintiff upon all the claims except two, and the county appeals.

It is first contended that the provisions of chapter 106, S. L. 1925 [O. S. 1931, secs. 5976-5979], were not complied with in that no sufficient proof was made of the financial condition of the county before final judgment was entered. This contention is without merit. The record discloses that at the trial, when plaintiff was about to offer the proof required by law, a stipulation was entered into, which, when taken in connection with the exhibits therein referred to, clearly shows that plaintiff's claims, if otherwise proper, would not exceed the limit of county indebtedness provided by law.

The real issue between the parties was whether or not the appropriations for county highway purposes, for the fiscal year during which the work and labor claimed for was done and performed, had been exhausted before the work claimed for was done. There is no question but that the labor, for which judgment was rendered, was done and performed on the county highways of Carter county and in the repair shop maintained by the county. The record discloses that there was no ad valorem tax levy made for county highway purposes for the fiscal year involved, i.e., 1926-27. The appropriations made therefor were based on estimated income from sources other than ad valorem taxes.

At the close of the fiscal year there was an unexpended balance in the total appropriations for county highway purposes of $507.37, according to the testimony of the deputy county clerk.

The appropriations were divided equally among the three county commissioners' districts—$72,368 to each district. That part of the total appropriation allotted by the excise board to district No. 1 was completely exhausted before January 1, 1927. Work was done on the county highway in that district thereafter, represented by claims in this suit aggregating the amount $411.75. The balance for which judgment was rendered was for work done in the repair shop maintained by the county, but located in district No. 1.

Defendant contends that because that part of the appropriation allocated by the

excise board to district No. 1 was exhausted, there was and could be no liability of the county as a whole for this work.

This contention is wholly without merit, especially as to the work done in the repair shop. The record discloses that this shop was maintained by the county and the work was upon road machinery owned by the county. It cannot be said that when road machinery is purchased by the board of county commissioners, it belongs to any particular county commissioner's district, or that it must be used in any particular district. Even though the county excise board may undertake to allocate an appropriation for the purchase of machinery to a particular commissioner's district, the machinery purchased out of such appropriation is the property of the county, and not of the district, and the county is responsible for its upkeep. It may be used by the board of county commissioners on any county highway in the county. As to work done on the county highway, a county commissioner's district as such is not responsible therefor. The construction and maintenance of county highways is a function to be performed by the county as a whole.

Defendant cites Adjustment Realty Co. v. Excise Board of Muskogee County, 141 Okla. 130, 284 P. 27, as authority for its contention. All that case holds on that question is that the county commissioners must detail the expenditures in the county highway fund, and the location of the work to be performed must be shown. In so doing the appropriations may be divided, and, when so divided, a tax levy made therefor may not be successfully attacked by a taxpayer protesting such levy before the Court of Tax Review. Certainly the county commissioners may, for convenience in making up the estimated needs for the county highway fund, divide the same among the three commissioners' districts in such proportion as they deem proper, and may properly estimate how much may be needed in each district. A taxpayer cannot successfully attack the levy on that account.

It is stipulated that all of the $72,368. allocated to district No. 1, had been expended prior to December 23, 1926. That was before any of the work claimed for was done. But it is further stipulated that the amounts allocated to districts 2 and 3 had not been exhausted at the time the claims in controversy accrued, and that at that time there were funds on hand to the credit of districts 2 and 3 in excess of the amount of the claims in controversy. It is further stipulated, however, that all the appropriations for districts 2 and 3 had been expended and were exhausted at the close of the fiscal year without taking into consideration the claims in controversy. This stipulation is in conflict with the uncontradicted testimony of the deputy county clerk. But it is well settled that if there were funds available when the labor was performed, the county would be liable, and if the board of county commissioners thereafter dissipated the fund and paid it out on claims or contracts accruing thereafter, the members of the board would be liable on their official bonds for the amount expended in excess of the appropriation.

It is next contended that plaintiff's petition wholly fails to state a cause of action, and is, therefore, insufficient to support the judgment.

In re Gypsy Oil Co. 141 Okla. 291, 285 P. 67, is cited in support of this contention. That case is not in point and does not support the contention here made. There the claims sued upon were not verified. Here every claim is properly verified before the county clerk. There the petition did not allege that the claims came within any legal appropriation. Here the petition alleges that when the labor was performed, there were sufficient funds within the appropriation to pay therefor, and that the same had been subsequently expended for other purposes thereby exhausting the appropriations out of which claimant should have been paid.

It is next contended that section 1 of ch. 49, S. L. 1925, was not complied with in that the contracts of employment of the several laborers were not submitted to the county clerk, the officer charged with keeping the account of the appropriations, and the expenditure records of the county highway fund.

Section 1 of the chapter referred to is but a part of an act of the Legislature designed to take from the board of county commissioners the power to manage and control the fiscal affairs of the county and transfer the power to purchase supplies and equipment and to contract for printing and the maintenance of the county officers to the officers whose office or department the several appropriations for such purposes were available.

Section 5 of the act was declared unconstitutional by this court in Walker-Taylor Co. v. Board of County Commissioners, 125

Okla. 226, 257 P. 324. In the body of the opinion it is said:

"In the instant case it is clearly evident that the purpose and intent of the subject-matter as contained in section 5 of the act in question is. wholly absent from the title to said act, and it is further evident that all other matters mentioned in said act are merely incidental to section 5 thereof."

Even though we consider all the other sections of the act valid, the provisions thereof could hardly be said to be applicable to employment of day laborers on county highways.

In Board of County Commissioners v. Barr, 68 Okla. 193, 173 P. 206, it is said:

"* * * The Legislature never intended such an impracticable procedure as would require the board, before employing any individual teamster or other laborer, to convene and to do so sitting as a body. A more reasonable mode and practical way in which to do the work, after it had once been authorized, would be to have some one in charge of the work who would have the right to employ and discharge the men during the progress of the work as circumstances required, in order to promote the practical construction or improvement of the road, and thus subserve the best interests of the county."

The record discloses to some extent a most reprehensible practice of dividing the county highway fund into three equal parts, apportioning one-third thereof to each commissioner's district, and allowing each commissioner to make his own plans for the improvement of the county highways, and to expend the funds allotted to his district, as he saw fit, without consulting either of the other two members. That. in effect, was a division of the county into three separate units for road purposes. This system virtually made each commissioner a dictator within his own district with power to expend the county funds as he saw fit and to improve the county highways in his districts in such places, and in. such manner, as he pleased. The inevitable result of such practice is that each commissioner builds roads and bridges and improves the county highways in his own vicinity, or where it would most benefit himself financially or politically. This necessarily leads to corruption and graft. Such practices ought never be tolerated. The law contemplates that every county commissioner should serve the county as a whole and not his own district alone. The board should act as a whole by a majority thereof in planning and carrying out county

highway improvements. By so doing two commissioners could, and should, act as a check upon the third member wherever and whenever he sought to benefit himself or his political friends through the use of public funds. Public officials who use the public funds entrusted to them to expend for the benefit of the whole people to build up enterprises in their own community or for the benefit of themselves personally, or their political friends and supporters, should promptly be removed from office. Likewise, county commissioners who, in carrying out such schemes, deplete the county highway funds and create claims in excess of the legal appropriations, should be promptly removed from office and called to account therefor upon their official bonds.

But it does not follow that a common laborer who performs labor upon the county highway under the direction of the county commissioner at a time when there are sufficient funds in an appropriation made. therefor to pay for such labor, should be penalized by the corrupt or unlawful expenditure of such funds by the county commissioners after such labor is performed.

In the instant case the judgment rendered by the trial court was correct and should have been permitted to stand without appeal, and proceedings should have been commenced to recover the excess expenditures, if any, from. the county commissioners and the sureties on their bonds.

The judgment is, therefore, affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. McNEILL, J., absent.