George W. PEASE, Jr., et al., Appellant,

v.

**BOARD OF COUNTY COMMISSIONERS,
OSAGE COUNTY, State of Okla-
homa, Appellee,
Indian Nations Council of Governments,
Appellee.**

No. 48370.

Supreme Court of Oklahoma.

May 18, 1976.

**566**

William H. Hall, Dist. Atty., Andrew B. Allen, Asst. Dist. Atty., Tulsa, for appellees.

Burdick, Clark & Hron, Ponca City, for appellants.

DOOLIN, Justice.

In 1965 the Oklahoma Legislature enacted the Interlocal Cooperation Act, 74 O.S. 1971 § 1001 et seq. permitting cooperation among local governmental units to provide joint services and facilities for their mutual advantage. Pursuant to this statute several such organizations have formed throughout the state such as the Indian Nations Council of Governments (INCOG). It is the validity of the agreement forming INCOG which is challenged in this appeal not the act itself.

INCOG was created by agreement in 1967 under the authority of the above mentioned act. Originally included in the agreement were Creek, Osage, Rogers and Tulsa Counties but the organization has expanded to include certain towns within these counties.[1] This agreement was approved as to form and compatibility with the laws of the State of Oklahoma by the Attorney General as required by 74 O.S. 1971 § 1004(f).

Each governmental unit is represented on the Board of Directors by one or more representatives selected by the Board of County Commissioners of that county. Membership is voluntary. INCOG's activities are directed primarily to areas of planning and coordination in attempting to solve area wide problems, and toward strengthening of local governmental processes in the areas of criminal justice, environment, physical planning and others. It also acts as a district clearing house for certain federal funds and as agent for "sub-state planning districts" of the Oklahoma Industrial Development and Park Commission.

INCOG filed two claims for a total amount of $1,664.50 with the Board of County Commissioners of Osage County (Board) representing assessments against the county for membership in INCOG. The Board approved the claims over the protest of petitioners who are residents and taxpayers of Osage County. Petitioners made written demand on the Osage County District Attorney to appeal the decision of the Board which was declined. Petitioners then filed the present action January 31, 1974 in the District Court of Osage County in accordance with 19 O.S. 1971 § 431 et seq, alleging payment of the assessment to INCOG is unlawful. INCOG was permitted to intervene. After hearing and consideration of briefs the trial court rendered judgment affirming the action of Board. Petitioners appeal to this court.

If petitioners' view is to prevail, Board would have no right to authorize payment to INCOG in that the agreement is invalid for failure to meet the requirements of §§ 1004(c) and (d) of the Interlocal Cooperation Act. They also urge use of ad valorem tax receipts to support INCOG violates the State Constitutional proscription against levying ad valorem tax "for state purposes" (Art. 10 § 9(a))[2] and against a governmental agency becoming a stockholder in a private corporation (Art. 10 § 17).[3]

---

1. Osage County upon resolution of County Commissioners withdrew from INCOG October 7, 1974.

2. Art. 10 § 9(a) * * * No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this State be used for State purposes.

3. Art. 10 § 17. * * * *Aid to corporations, etc., by counties, cities, towns, etc.*—The Legislature shall not authorize any county or subdivision thereof, city, town, or incorpo-

Petitioners first submit the INCOG agreement does not specify, as required by §§ 1004(c)(d):

1. its duration

2. the method of partial or complete dissolution

3. the manner for acquiring and holding property

4. scope and specific purpose and limitations

■ We need not consider # 3 above as it is a requirement which applies only if agreement "does not establish a separate legal entity to conduct the joint or cooperative undertaking."[4] INCOG's agreement is more than a simple agreement to cooperate; it creates an organization or council that the law recognizes as having a legal existence and thus is a legal entity. See *Rollow v. West*, 479 P.2d 962 (Okl.1971).

■ The statute does not provide a restriction on the duration of such an organization, only that the agreement shall *specify* its duration. This requirement is met by the provision in the agreement stating: the agreement "shall remain in full force and effect until organization is dissolved under provisions of Section 11–A." Section 11–A provides: "Dissolution of the Indian Nations Council of Governments shall be effected upon a majority vote of the Board of Directors of the participating members." The association is voluntary and partial dissolution may be accomplished by a member withdrawing at will. An examination of the agreement discloses the purpose of the organization is also defined in some detail. Further it must be pointed out the agreement was ap-

proved by the Attorney General as to proper form and compatibility with laws of this state as required by sub-section (f) of this provision.[5] We hold the agreement to be valid as to statutory compliance.

■ Petitioners' second proposition concerning the unconstitutionality of the use of general funds of the County, a portion of which is supplied by ad valorem tax revenues, to pay INCOG is also without merit. We agree ad valorem tax receipts may not be used for state purposes. But merely because the use of tax receipts might transcend county lines does not make their use for "state purposes." *State ex rel G. T. Blankenship v. Atoka County*, 456 P.2d 537 (Okl.1967). INCOG is not a unit of *state* government. To the contrary it is formed to assist *local* communities and maintain *local* government. There was no evidence introduced at trial of any activities serving state purposes.

■ Petitioners' third proposition that membership of Osage County in INCOG violates Art. 10 § 17 of the Oklahoma Constitution supra is based on INCOG's statement of principles and policies which provides among other things:

"The Council is an organization through which individual public agencies can coordinate their efforts. It is not in itself a government nor does it seek to become one."

Petitioners submit if INCOG is not governmental it is private. INCOG denies this provision in its agreement makes its activities unconstitutional. Because the exact generic classification of INCOG is unclear does not make it a private organi-

rated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.

4. § 1004(d).

5. § 1004(f) Every agreement made hereunder shall, prior to and as a condition precedent to its entry into force, be submitted to the Attorney General who shall determine whether the agreement is in proper form and

compatible with the laws of this state. The Attorney General shall approve any agreement submitted to him hereunder unless he shall find that it does not meet the conditions set forth herein and shall detail in writing addressed to the governing bodies of the public agencies concerned the specific respects in which the proposed agreement fails to meet the requirements of law. Failure to disapprove an agreement submitted hereunder within sixty days of its submission shall constitute approval thereof.

zation. It is an agency of local governments participating in its membership. See *Application of Southern Oklahoma Development Trust*, 470 P.2d 572 (Okl.1970).

We therefore hold payment of dues to INCOG by member cities and counties does not violate the Oklahoma State Constitution. The trial court was correct in approving Board's payment of Osage County's quarterly membership assessment.

AFFIRMED.

All the Justices concur.