Dear Senator Justice:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. When a county, by agreement with a municipality pursuant to 11 O.S.Supp. 2010, § 36-113[11-36-113], constructs, improves, repairs or maintains streets or roads of a municipality, should the municipal street or road mileage be included in the computation of county road mileage for purposes of tax revenues apportioned to the county?
 2. When distributing county road funds among the districts within a county, should county commissioners follow formulas such as those specified in 68 O.S.Supp. 2010, § 500.6[68-500.6] of the Motor Fuel Tax Code, which governs the distribution of taxes levied on gasoline to counties based on area, rural population and county road mileage?
 INTRODUCTION
A number of provisions exist in Oklahoma law governing streets and roads located within municipalities and counties and governing state highways designated as part of the State Highway System. Among these provisions are those found in the portion of Title 69 known as "The Oklahoma Highway Code," in Title 19 governing counties and county officers, and in Title 11 governing cities and towns.
The intent of the Legislature in adopting the Oklahoma Highway Code of 1968 ("Highway Code") was that the State of Oklahoma "have an integrated system of all roads, highways and streets to provide safe and efficient highway transportation throughout the state." 69 O.S. 2001,§ 101(h). The Legislature declared at Section 101 (i) that the Highway Code "is necessary for the preservation of the public peace, health and safety, for promotion of the general welfare, and as a contribution to the *Page 2 
national defense." The Legislature deemed it essential that the State Transportation Commission[1] and counties and municipalities be granted the authority to assist and cooperate with each other and coordinate their activities. Id. § 101(h).
A. The highways of Oklahoma are divided into the State highwaysystem and the county highway system.
The highways of Oklahoma are "divided into two classes to be known as the State Highway System and county highway system." 69 O.S.Supp. 2010, § 501[69-501](A). The Highway Code provides that the county highway system is composed of "all public roads within any county, less any part of any road or roads which may be designated as state highway by the State Transportation Commission." 69 O.S. 2001, § 601[69-601](A). The Highway Code defines "county highway system" as "[t]he system of highways the responsibility for which is lodged with the counties." Id. § 213.[2] The boards of county commissioners of the counties in Oklahoma are to "adopt a system of county highways and public roads which shall constitute the county primary road system of their respective counties."Id. § 654. The terms "roads" and "highways" are used interchangeably in certain parts of the Highway Code, creating some confusion, but it is clear that boards of county commissioners are responsible for county highways and public roads of their respective counties.
B. Counties are not responsible for streets and roads within amunicipality but may contract with municipalities for certainimprovements.
The Oklahoma Supreme Court has determined that counties are not responsible for municipal streets and roads. In Bannister v.Farmers Alliance Mutual Insurance Co., 630 P.2d 1279 (Okla. 1981), the court answered five questions that had been certified from the United States District Court for the Western District of Oklahoma. One specific question was whether a contract under69 O.S. 1971, § 603[3] constituted an exception to the rule that a municipality has a non-delegable duty to maintain its streets in a reasonably safe condition for travel by the public. The court held: *Page 3 
 The law is clear in Oklahoma that a municipality has the primary duty of maintaining its streets in a reasonably safe condition for travel by the public. This duty cannot be evaded, suspended or cast upon others by any act of the municipality. This duty is nondelegable. The city is liable for any breach thereof even if the damage alleged was caused by persons other than servants and employees of the municipality, such as an independent contractor.
Id. at 1281. The court continued by noting that, in its earlier decision in Terry v. Edgin, 561 P.2d 60 (Okla. 1977), the court adopted the reasoning of Attorney General Opinion 63-159 that held 69 O.S. 1971, § 601 "places the duty to maintain county roads on the county and gives exclusive jurisdiction for such maintenance, applicable only to those county highways which lie outside the boundaries of a municipality." Bannister,630 P.2d at 1281. The court noted the "opinion of the Attorney General was based on a finding that any other interpretation would be in direct conflict with [what was then]11 O.S. 1961, § 72, which establishe[d] separate road districts for municipalities." Id. (footnote omitted).
Although Section 72 was repealed in 1978, the court inBannister continued to hold that Section 601 "was not applicable to roads within municipal boundaries" and held the county had no duty "to maintain a city road that was a continuation of the county highway system nor was it vested with exclusive jurisdiction over the city road." Id. Entering into a contract with a municipality for certain improvements does not convert municipal streets into part of the county road system.
Municipalities hold title to "streets, roads and public ways within the limits of a municipality which have been dedicated and accepted by the municipal governing body" and such title is held in trust for public use and enjoyment. 11 O.S. 2001, § 36-101[11-36-101]. Municipal governing bodies are responsible for regulating and controlling the use of "streets, roads and other public ways within the limits of the municipality[.]" Id. § 36-101(1). The Highway Code does not apply to these municipal streets and roads as the Highway Code "shall not apply to cities, towns, planning district or any other area where jurisdiction is otherwise vested by law in a political subdivision to establish standards for the dedication of roads and bridges." 69 O.S. 2001, § 601.2[69-601.2].
 I. THE ROAD MILEAGE OF MUNICIPAL ROADS OR STREETS CONSTRUCTED, IMPROVED, REPAIRED OR MAINTAINED BY AGREEMENT WITH COUNTIES SHALL NOT BE INCLUDED IN THE CALCULATION OF COUNTY ROAD MILEAGE FOR TAX REVENUE PURPOSES.
You first ask whether a county should include the mileage of municipal roads or streets constructed, improved, repaired or maintained by agreement with the county in the calculation of county road mileage for purposes of state tax venues apportioned to the county. Several statutory provisions authorize county commissioners to enter into agreements with municipalities to construct, improve, repair or maintain the roads or streets of a municipality. Title 69 O.S. 2001, § 1903[69-1903] provides: *Page 4 
 B. A county and a municipality or any two or more counties or municipalities may contract with each other to construct, improve, repair or maintain any of the roads, streets or highways of the other parties to the contract. No party to the contract shall be liable for the acts or omissions of the other parties or for failure to inspect or supervise the performance of the other parties.
Id. This is a general provision authorizing counties to contract with one another or with municipalities to "construct, improve, repair or maintain any of the roads, streets or highways of the other parties to the contract." Id. Under this provision, counties may contract with each other to construct, improve, repair or maintain county roads or highways. Municipalities may contract with counties to construct, improve, repair or maintain county roads or highways. Counties are also authorized to contract with municipalities to construct, improve, repair or maintain municipal roads or streets.
Counties are also authorized to enter into agreements with municipalities for use of county highway funds to improve municipal streets which are part of the county highway system. That statute provides in part:
 C. Any board of county commissioners, in its discretion, may enter into agreements with the governing body of any municipality for participation with county highway funds in the cost of any improvements on streets which are in the limits of the municipality and are part of the county highway system. Such agreements may provide for the award and supervision of the contract by the municipality. The county's share of the cost is to be due and payable upon completion of the project.
11 O.S. 2001, § 36-112[11-36-112] (emphasis added). As the language of the statute shows, this provision is limited to improvements of municipal streets which are part of the county highway system.
The provision about which you inquire, 11 O.S.Supp. 2010, § 36-113[11-36-113], authorizes the board of county commissioners of any county to enter into an agreement with a municipality to construct, improve, repair or maintain any of the streets or roads of the municipality under certain circumstances based on population and the availability of earmarked sales tax funds.
Those circumstances are as follows:
 A. The Department of Transportation may, or the board of county commissioners of any county or federally recognized tribal government shall, by agreement with the governing body of a municipality having a population less than five thousand (5, 000), construct, improve, repair or maintain any of the streets of the municipality. *Page 5 
 B. The board of county commissioners may construct, improve, repair, or maintain any of the streets of a municipality having a population of less than five thousand (5, 000) persons subject to agreement between the governing bodies of the county and the municipality without regard to whether the municipality has passed a sales tax with proceeds earmarked to construct, improve, repair or maintain any of the streets or roadways of such municipality.
 C. The board of county commissioners may construct, improve, repair or maintain any of the streets of a municipality having a population of greater than five thousand (5, 000) persons but less than fifteen thousand (15, 000) persons if the municipality has passed a sales tax with the proceeds earmarked to construct, improve, repair or maintain any of the streets or roadways of such municipality.
 D. The board of county commissioners may construct, improve, repair, or maintain any of the streets of a municipality if the county has a population in excess of five hundred thousand (500, 000) persons according to the most recent Federal Decennial Census. The agreements entered into pursuant to the provisions of this subsection may be performed without regard to whether the municipality has passed a sales tax with proceeds earmarked to construct, improve, repair or maintain any of the streets or roadways of such municipality.
11 O.S.Supp. 2010, 36-113.
This statute was amended in 2010 with the amendments to become effective May 13, 2010. See
2010 Okla. Sess. Laws ch. 266, §§ 1, 4. The 2010 amendment included the addition of subsection D, above, and subsection E which provides:
 E. If a county constructs, improves, repairs or maintains any municipal street or road pursuant to the provisions of this section, such municipal road mileage shall not be included in the computation of mileage for purposes of any state tax revenues apportioned to the county.
Id.
Another statute exists in the Highway Code that applies to certification of county road mileage by the State Transportation Commission. That statute, 69 O.S.Supp. 2010, § 316[69-316], titled, "Certification of county road mileage," provides:
 The Commission, on or before the first day of June of each year, shall certify to the Oklahoma Tax Commission the county road mileage of each county and the total *Page 6 
county road mileage of the state as such mileage existed on the first day of January of such year. Such mileage shall be the computation of the existing road mileage for counties including any mileage represented by streets or roads in municipalities with a population of less than two thousand five hundred (2, 500) and any other streets and roads in municipalities with a population of less than five thousand (5, 000) that the county has agreed to construct, maintain, or repair. Any roads removed from the State Highway System by the Transportation Commission and returned to the county road system shall be added to the total county road mileage of the said county.
Id. (emphasis added).
This statute governs the certification of county road mileage by the State Transportation Commission to the Oklahoma Tax Commission. There is a conflict between 11 O.S.Supp. 2010, § 36-113[11-36-113](E) and 69 O.S.Supp. 2010, § 316[69-316] as to whether certain municipal streets and roads constructed, improved, repaired or maintained pursuant to agreements with counties are to be included in the county road mileage. Section 36-113(E) provides that the road mileage for municipal streets or roads constructed, improved, repaired or maintained by the county pursuant to this section of law "shall not be included in the computation of mileage for purposes of any state tax revenues apportioned to the county."Id. Section 316 of Title 69, on the other hand, requires the State Transportation Commission to certify to the Oklahoma Tax Commission the county road mileage of each county as such mileage existed on January 1 of each year. This mileage "shall be the computation of the existing road mileage for counties including . . . any other streets and roads in municipalities with apopulation of less than five thousand (5, 000) that the county hasagreed to construct, maintain, or repair."Id. (emphasis added). Thus, as to streets and roads in municipalities with a population of less than 5, 000 that the county has agreed to construct, maintain or repair pursuant to Section 36-113, there is a conflict between the two statutes.
A. Section 36-113 was enacted later in time and is, therefore,controlling.
Our task is to attempt to harmonize the two statutes and give effect to both statutes, if possible. Rogers v. QuicktripCorp., 230 P.3d 853, 859 (Okla. 2010). Both statutes govern how to calculate county road mileage that is reported to the Oklahoma Tax Commission. As the statutes contain conflicting language as to the inclusion, for tax purposes, of the mileage of streets and roads in municipalities with a population of less than five thousand that the county has agreed to construct, maintain or repair, we are not able to harmonize them in a manner that gives effect to both statutes. We must, therefore, look to rules of statutory construction to determine which provision controls.Id. at 859-60.
One of the rules of statutory construction applicable to your question is the well-settled rule providing that, if a repugnancy exists between two statutes, the more recently enacted legislation controls over the earlier provision. Id.; Poafpybitty v Skelly OilCo., 394 P.2d 515, 519 (Okla. 1964). *Page 7 
Title 69 O.S.Supp. 2010, § 316[69-316] was enacted in 1963[4] and was last amended in 2002. Section 36-113 was amended in 2010 to add provisions providing for agreements in additional circumstances and to add Subsection E, creating the conflict now at issue. Subsection E specifically provides that the mileage of municipal streets or roads constructed, improved, repaired or maintained by agreement with municipalities shall not be included in the computation of county road mileage for the purpose of tax revenues apportioned to the county. Under rules of statutory construction, this latter-enacted legislation expresses the Legislature's more recent intent and controls over the language in 69 O.S.Supp. 2010, § 316[69-316] that has been in existence since 2002.
B. Section 36-113 is more specificthan 69 O.S.Supp. 2010, § 316[69-316] and is, therefore, controlling.
Another rule of statutory construction is that specific statutes control over general ones. "Where a matter is addressed by two statutes, one specific and the other general, the specific statute governs over the general provision." Davis v. Martin MariettaMaterials, Inc., 246 P.3d 454, 455 (Okla. 2010). The provision in Title 11 is a specific statute enacted to expand the authority of counties and municipalities to enter into agreements to improve, construct, repair, or maintain municipal streets and roads. Subsection E specifically governs state tax revenues, providing that municipal streets and roads constructed, improved, repaired or maintained pursuant to an agreement with a county under this section shall not be included in the county road mileage. The provision in Title 69 is a more general provision governing certification of county road mileage by the State Transportation Commission. That statute generally governs certification of road mileage whereas Section 36-113 of Title 11 specifically governs agreements between counties and municipalities for construction, improvement, repair and maintenance of municipal streets and roads. Therefore, we conclude that Section 36-113 is the more specific of the two statutes and controls over the more general provision in Title 69.
Based on these rules of statutory construction, we conclude that it is the intent of the Legislature that the road mileage of municipal streets or roads that counties agree to construct, improve, repair or maintain by agreement with the municipalities pursuant to 11 O.S.Supp. 2010, § 36-113[11-36-113], shall not be included in county road mileage for the purpose of state tax revenues. *Page 8 
 II. THE OKLAHOMA CONSTITUTION DOES NOT PROHIBIT USINGHIGHWAY FUNDS DERIVED FROM STATE TAXES OR COUNTY AD VALOREM TAXESTO CONSTRUCT, IMPROVE, REPAIR OR MAINTAIN MUNICIPALS STREETSOR ROADS BY AGREEMENT BETWEEN MUNICIPALITIES ANDCOUNTIES.
Title 11 O.S.Supp. 2010, § 36-113[11-36-113] does not require that an agreement between a county and a municipality for the construction, improvement, repair or maintenance of municipal streets or roads involves the payment of consideration by the municipality. We must determine whether such an agreement that does not involve consideration violates the Oklahoma Constitution, specifically those provisions restricting the use of state taxes and county ad valorem taxes.
A. The Constitution does not prohibit using county highwayfunds derived from state taxes for a county or municipal purpose inwhich the State has an interest.
As part of our analysis, we consider whether county highway funds derived from state taxes may be used to improve, construct, repair or maintain municipal streets or roads. The sources of monies for the highway funds are provided for in state statutes and are collected by the State. We specifically discussed these sources in Attorney General Opinion 95-95 and characterized the source of funds as gasoline taxes, diesel and special fuels tax and motor vehicle funds. Id. at 242. Those funds are distributed to counties based upon factors, including county road mileage, which are articulated in the specific statutes.[5]
Article X, Section 20 of the Oklahoma Constitution provides:
 The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes.
Id.
The Oklahoma Supreme Court has found this constitutional provision does not preclude the Legislature from apportioning part of the motor vehicle license tax to counties. Pawnee County ExciseBd. v. Kurn, 101 P.2d 614 (Okla. 1940). The issue in that case was whether county road funds derived by state taxes could be used for road construction and maintenance with a requirement that a portion of the funds be applied toward retiring road bond obligations. Id. at 616. The court determined the tax was "to provide for and promote the public road program which is inherently and by our Constitution a proper state purpose." Id. The court found it to be well settled that "the *Page 9 
Legislature may levy a tax for a purpose in which the state had a sovereign interest and such interest extends to the construction and maintenance of roads." Id. at 617.
The court also found in Board of Commissioners v. Shaw,182 P.2d 507, 515 (Okla. 1947), that Section 20 of Article X did not constitute a limitation on the power of the State to impose taxes for purposes in which the State has a sovereign interest although the character of the taxes may be municipal. The issue in that case was whether state taxes could be used to reimburse a county for unpaid taxes when property was liquidated.
This same logic applies to state-imposed taxes used for construction, improvement, repair and maintenance of municipal streets and roads as the State's interest extends to these matters.[6] The Legislature stated at 69 O.S. 2001, § 101[69-101](g), that the "efficient management, operation and control of our county roads and other public thoroughfares are likewise a matter of vital public interest." Thus, Okla. Const. art. X, § 20 does not prohibit counties from entering into agreements authorized by law, without compensation from a municipality, to construct, improve, repair or maintain municipal streets or roads.
B. The Constitution does not prohibit the use of county advalorem taxes for municipal purposes where the taxes are not usedfor a State purpose.
Another constitutional provision for consideration is Okla. Const. art. X, § 9(a) pertaining to ad valorem taxes. That provision reads in pertinent part:
 No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this State be used for State purposes.
Id. Although state-collected monies are generally the primary source of revenue for the county highway fund, county ad valorem tax revenues may be appropriated to the county road fund by the County Excise Board. See 69 O.S. 2001, § 1503[69-1503]. Thus, we must consider whether county ad valorem taxes may be used to construct, improve, repair or maintain municipal streets and roads.[7] *Page 10 
The leading authority interpreting this constitutional provision isState ex rel. Department of Human Services v. Malibie,630 P.2d 310 (Okla. 1981). One issue in Malibie, was whether county ad valorem taxes could be used to fund a state program. A state statute required counties to appropriate at least one-fifth (1/5) of one mill to the Crippled Children's Program.Id. at 312. The court concluded:
 The Crippled Children's Act . . . is a State program, controlled and administered by a Department of the State and State officers. Accordingly, we hold that the provisions of the Act which require that county ad valorem tax revenues be appropriated to fund the program constitute an appropriation of county ad valorem revenues for a State purpose, and thus, such provisions violate Article 10, Section 9, of the Oklahoma Constitution. . . .
Id. at 317.
However, not every instance in which county funds are used for what may appear to be state purposes violate this provision. The Oklahoma Supreme Court recognized in Pease v. Board of CountyCommissioners, 550 P.2d 565, 567 (Okla. 1976), that "merely because the use of tax receipts might transcend county lines does not make their use for `state purposes.'" Id. In that case, general funds of the county, a portion of which was supplied by ad valorem taxes, was used to fund the Indian Nations Council of Governments ("INCOG"). The court noted that INCOG was "formed to assist Local communities and maintain Local government."Id. Thus, the ad valorem taxes did not serve a state purposes.
Similarly, in State ex rel. Blankenship v. Atoka County,456 P.2d 537 (Okla. 1969), a statute required counties to pay one-half of the salaries of assistant district attorneys. A claim was made that this statute violated the provision against levying ad valorem taxes for state purposes. The court noted that a district attorney and his assistant in each county perform essentially the same duties and functions as were previously held by county attorneys who were classified as county officers. The court then held:
 The District Attorney and his deputies defend and prosecute all actions in which the counties of his district are interested and give legal advise to county officials. . . . In the instant case the object to be accomplished by the District Attorney Act was to obtain a more effective performance of the duties theretofore imposed upon the county attorney. We hold that [the statute] requiring Atoka and Coal Counties to pay one-half of the salaries of one Assistant District Attorney in their respective counties does not offend Art. X, Sec. 9, Oklahoma Constitution.
Id. at 539-40. This ruling was based in part on the court's earlier decision in Excise Board v. Chicago, Rock Island andPacific Railway Co., 34 P.2d 268 (Okla. 1934). That case concerned the authority of the county to "make a levy for a biennial audit fund to be used in paying the expenses of an audit of the needs and accounts of all the county, including the salaries and expenses of *Page 11 
deputies of the state examiner and inspector while engaged in making such audit." Id. at 272. In finding no violation of Okla. Const. art. X, § 9, the court stated that the "purpose of the levy must be judged by the object to be accomplished thereby."Id. at 273. As the object of the statute in question was to provide for an audit of the books of each county, the purpose was "just as truly a county purpose as is keeping the records in county clerk or county treasurer's office." Id. The fact that the person charged with carrying out the purpose of the law was a state official did not render the statute violative of the Constitution.
Under these authorities, the plain terms of Okla. Const. art. X, § 9 are not violated as the use of county ad valorem taxes to construct, improve, repair or maintain municipal streets or roads does not fulfill a state purpose. We specifically held in Attorney General Opinion 89-42 that "[t]he construction, improvement, etc., of streets of a municipality clearly serve a local government purpose." Id. at 52. We concluded "that there is no state constitutional prohibition against use of ad valorem tax revenues from the county highway fund on municipal streets."Id. Likewise, we conclude here that the use of county ad valorem tax revenues to improve, construct, repair or maintain municipal streets or roads pursuant to an agreement between a county and a municipality does not violate Okla. Const. art. X, § 9.
 III. THE MOTOR FUEL TAX CODE GOVERNS APPORTIONMENT OF FUEL TAXES AMONG THE COUNTIES OF THE STATE BUT DOES NOTGOVERN APPORTIONMENT WITHIN THE DISTRICTS OF INDIVIDUALCOUNTIES.
You also ask whether county commissioners should follow the provisions in the Motor Fuel Tax Code, 68 O.S. 2001 Supp. 2010, §§ 500.1-500.64, [8] in distributing funds among the county commissioner districts of a given county. The Motor Fuel Tax Code contains provisions at Section 500.6 that governs the apportionment of motor fuel taxes among the counties of the State. The specific provision about which you inquire, 68 O.S.Supp. 2010, § 500.6[68-500.6](A)(4), provides that twenty-seven percent (27%) of the monies collected "shallbe transmitted by the Tax Commission to the various counties of thestate." Id. (emphasis added). Pursuant to Section 500.6(A)(4)(a), sixty-five and three-tenths percent (65.3%) is required to be used for certain purposes. Forty percent (40%) of the sixty-five and three-tenths percent (65.3%) is to be "distributed to the various counties in the proportion which the county road mileage of each county bears to the entire state road mileage as certified by the Transportation Commission."Id. § 500.6(A)(4)(a)(1) (emphasis added). The remaining sixty percent (60%) "shall be distributed to the various counties
on the basis which the population and area of each county bears to the total population and area of the state."Id. § 500.6(A)(4)(a)(2) (emphasis added). *Page 12 
In addition, Section 500.6(A)(4)(b) governs the manner in which twenty-three and one-tenth percent (23.1%) of the monies shall be distributed. That subsection states that the monies shall be distributed in the following manner:
 One-third (1/3) on area; one-third (1/3) on rural population, defined as including the population of all municipalities with a population of less than five thousand (5, 000) according to the latest Federal Decennial Census; and one-third (1/3) on county road mileage, as last certified by the Department of Transportation, as each county bears to the entire areas, rural population and road mileage of the state. . . .
Id.
The plain language of these statutes governs how monies are to be distributed among the various counties of the State. The statute does not govern how the county commissioner are to distribute the monies within the districts of the individual counties. As there is no ambiguity in the statute, the plain language controls. SeeRussell v. Chase Invest. Serv. Corp.,212 P. 3d 1178, 1185 (Okla. 2009) ("If legislative intent is ascertainable from a statute's plain and unambiguous language, the statute's words will be given their obvious and ordinary meaning and will be followed without additional inquiry.").
The Legislature has entrusted the board of county commissioners with exercising the powers of the county as a whole. This is made known in a number of statutes. The Legislature provided in 69 O.S. 2001, § 601[69-601] (A) that it is the duty of the board of county commissioners in each county "to construct and maintain as county highways those roads which best serve the most people of thecounty." Id. (emphasis added). In 19 O.S. 2001, § 3[19-3], the Legislature provided, "[t]he powers of a county as a bodypolitic and corporate shall be exercised by its board of county commissioners." (emphasis added).
The Supreme Court discussed the role of county commissioners inBoard of Commissioners v. Landrum,21 P.2d 736 (Okla. 1933).[9] In that case, highway appropriations to Carter County were divided equally among the three county commissioners' districts. The portion of the allocation allotted to District No. 1 was completely exhausted before January 1, 1927. Work was later done on that county highway and in the repair maintained by the county in District No. 1. The Board of County Commissioners claimed that because the part of the appropriation allocation to District No. 1 was exhausted there was no liability of the county as a whole for the work done.
The court found these contention without merit. As to the road machinery, the court stated: *Page 13 
 It cannot be said that, when road machinery is purchased by the board of county commissioners, it belongs to any particular county commissioner's district, or that it must be used in any particular district. Even though the county excise board may undertake to allocate an appropriation for the purchase of machinery to a particular commissioner's district, the machinery purchased out of such appropriations is the property of the county and not of the district, and the county is responsible for its upkeep.
Id. at 737-38.
The court also discussed work done on the county highway and stated:
 As to work done on the county highway, a county commissioner's district as such is not responsible therefor. The construction and maintenance of county highways is a function to be performed by the county as a whole.
Id. at 738. The court took the opportunity to explain the function of county government, characterizing as reprehensible the practice of dividing the county highway funds into three equal parts and allowing each commission to make his own plans for the improvement of the county highways and expending the funds allotted to his district as he saw fit without consulting the other two commissioners. The court stated:
 The law contemplates that every county commissioner should serve the county as a whole and not his own district alone. The board should act as a whole by a majority thereof in planning and carrying out county highway improvements. By so doing two commissioners could, and should, act as a check upon the third member wherever and whenever he sought to benefit himself or his political friends through the use of public funds.
Id. at 739 (emphasis added).
Therefore, to answer your second question, county commissioners are not required to allocate funds among the districts of the county in a manner such as that used in allocating motor fuel tax monies to various counties. To do so would be inconsistent with the nature of county government which requires the board of county commissioners to serve the county as a whole.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The road mileage of municipal streets or roads that the county has agreed to construct, improve, repair or maintain pursuant to 11 O.S.Supp. 2010, § 36-113[11-36-113](E) shall not be included as part of the county road mileage for purposes of state tax revenues apportioned to the county. Section 36-113(E) is controlling over 69 O.S.Supp. 2010, § 316[69-316], *Page 14 which contains conflicting language, as Section 36-113(E) was enacted later in time and is more specific.
 2. Counties may enter into agreements pursuant to 11 O.S.Supp. 2010, § 36-113[11-36-113] to construct, improve, repair or maintain municipal streets or roads without violating either, Okla. Const. art. X, § 20 prohibiting the imposition of state taxes for county or local purposes, or Okla. Const. art. X, § 9 prohibiting the use of county ad valorem taxes for state purposes.
 3. The Oklahoma Motor Fuel Tax Code, 68 O.S. 2001 Supp. 2010, § 500.1 — 500.64, governs the distribution of taxes levied upon certain motor fuels among the various counties of the State for purposes including constructing and maintaining county roads. This statute does not govern how county commissioners divide county road funds among the districts in the individual counties.
 4. A board of county commissioners is required to act on behalf of the county as a whole rather than each commissioner acting on behalf of his or her district. Bd. of Comm'rs v. Landrum, 21 P.2d 736, 737-38 (Okla. 1933). See also 69 O.S. 2001, § 201[69-201] (holding that it is the duty of the board of county commissioners in each county to construct and maintain those roads which best serve the most people of the county).
E. SCOTT PRUITT ATTORNEY GENERAL OF OKLAHOMA
SANDRA D. RINEHART SENIOR ASSISTANT ATTORNEY GENERAL
[1] The State Transportation Commission was originally known as the State Highway Commission. The Legislature changed the name of the Commission in 1976, and provided that "[a]ny statutory references to the State Highway Commission shall mean the Transportation Commission as redesignated herein." 69 O.S. 2001, § 4006[69-4006](A), see
1976 Okla. Sess. Laws ch. 218, § 6.
[2] "Public road" is defined by that Code as "[a] road constructed to connect other public roads or streets, but not connected to the highway." Id. § 232.
[3] At that time, Section 603 of Title 69 provided: "The board of county commissioners of any county may, under the direction of the Commission, contract for grading, draining or hardsurfacing any street within any municipality where such street is a continuation of or a connecting link in the state or county highway system." In 2010, the Legislature added the provision that the county may also contract for grading, draining or hardsurfacing municipal streets "if the county and the municipality have entered into an agreement pursuant to Section 36-113 of Title 11 of the Oklahoma Statutes for the construction, improvement, repair or maintenance of municipal streets." 2010 Okla. Sess. Laws. ch. 266, § 3 (amending 69 O.S. 2001, § 603[69-603]).
[4] See 1963 Okla. Sess. Laws ch. 351, § 1.
[5] Some statutes restrict the use of the funds for certain purposes. We do not, by our conclusion in this Opinion, intend to broaden the use of these funds beyond that provided for in those statutes.
[6] We so held in A.G. Opin. 89-42, 52, when we concluded that the payment of costs of constructing, improving, repairing and maintaining streets of a municipality out of the county highway fund did not violate Okla. Const. art, X, § 20.
[7] We recently opined in Attorney General Opinion 2011-08 that Okla. Const. art. X, § 9 is violated when counties are forced to expend county funds beyond the per diem paid to them by the state to house state prisoners after judgment and sentences had been entered. We also opined in Opinion 2011-18 that Okla. CONST. art. X, § 9 is violated when counties are forced to expend funds the counties would not otherwise spend to provide routine sick calls to county inmates in providing routine sick calls for retained state inmates. These conclusion were based on the fact that housing and providing medical treatment to state prisoners is a state purpose as provided in Okla. Const. art. XXI, § 1.
[8] The Motor Fuel Tax Code was amended by 2011 Okla. Sess. Laws ch. 163, §§ 1-10 to become effective January 1, 2012. These amendments are not relevant to your questions.
[9] A portion of this case has been superseded by statute as recognized in Chickasaw Lumber Co. v. Board of CountyCommissioners, 47 P.3d 137, 138 (Okla. 1935) and Board ofCounty Commissioners v. Standard Accident Insurance Co.,45 P.2d 459, 461 (Okla. 1935). This does not affect the purpose for which this case is cited in this Opinion. *Page 1